# Richmond

## MILLER V. NORTON AND SMITH, RECEIVERS.

### March 13, 1913.

1. BANKS AND BANKING—*Deposits—Debtor and Creditor.*—Where there is a general deposit of money in a bank, the title to and beneficial ownership of the money is vested in the bank, and the relation between it and the depositor is that of debtor and creditor. So likewise where a check drawn on a particular bank is presented to that bank for general deposit and the bank gives the depositor credit therefor, the relation between the bank and the depositor is that of debtor and creditor, since the giving of credit under such circumstances is practically and legally the same as if the bank had paid the money to the depositor and had received it again on deposit.

2. BANKS AND BANKING — *Deposits — For Collection—For Credit.*—Where a check on one bank is deposited in another for collection, the ownership of the check is not transferred to the receiving bank, but it is the agent of the depositor until collection is made, and not until then does it become the debtor of the depositor. But if the check is deposited in exchange for credit given the depositor, then the transaction is in effect a sale of the check to the bank, and it becomes the beneficial owner of the check and the debtor of the depositor.

3. BANKS AND BANKING—*Deposit of Checks—Intention of Parties—Bailment.*—Where a customer deposited in a bank a check on an out of town bank, and the bank credited his account with the amount of the check, and the deposit slip delivered to the customer contained the statement that items on out of town banks are credited subject to payment, and there was neither general custom, course of dealing, nor special agreement from which to gather the intention of the depositor and the bank when the check was deposited, and the sum credited was never drawn against by the depositor and he had no authority to draw against it until collected, unless crediting it as cash (the bank reserving the right to charge it back if not paid), gave him the right to check at once against it, the deposit was a mere bailment, and the title to the check did not pass to the bank when the deposit was made.

4. BANKS AND BANKING—*Deposits—Crediting Checks—Holder for Value.*—Under the American doctrine, the mere giving of credit to a depositor's account of a check does not constitute the bank a holder for value, but, in order to have that effect, the credit must be drawn upon.

Appeal from a decree of the Corporation Court of the city of Alexandria in a suit to wind up the affairs of an insolvent bank, in which suit the appellant filed a petition claiming the ownership of the proceeds of a check collected by the receivers of the bank. From an adverse decree the petitioner appeals.

*Reversed.*

The opinion states the case.

*Gibson & Nottingham,* for the appellant.

*S. G. Brent,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The first question raised and to be determined on this appeal is whether or not the title or ownership of a check for $629, deposited by the appellant, H. H. Miller, as agent, in the Culpeper branch of the Virginia Safe Deposit and Trust Corporation, passed when deposited to that corporation or remained in Miller, agent.

The facts material to the decision of that question are as follows: Prior to and during the months of November and December, 1910, the Virginia Safe Deposit and Trust Corporation (which will hereafter in this opinion be designated as "the bank") was engaged in a general banking business in the city of Alexandria, with branch banks located at a number of places in the State, among others at Culpeper and Remington. Miller, as agent, in the month of November, 1910, opened an account with the Culpeper

branch of the bank, making two deposits during that month by checks payable to him and drawn on the Culpeper branch. On the 27th day of December, and after the larger portion of those deposits had been withdrawn by check, Miller, as agent, mailed to the Culpeper branch a check drawn on the Fauquier National Bank, payable to Miller, in a letter which stated, "Enclosed find check for six hundred and twenty-nine dollars credit account." The Culpeper branch acknowledged receipt of letter and check on same day, in which it stated, "I credit $629.00  *  *  * Items outside of Alexandria credited, subject to payment." The deposit tickets used by the Culpeper branch had printed on them, "Items on places outside of Culpeper received by this bank will be collected through its regular correspondents, and it will not be responsible for failure to forward by most direct route, for any loss or delay in mail, or by reason of negligence or default of its correspondents." The check in question was forwarded by the Culpeper branch on the same day (the 27th) it was received to the office of the bank in Alexandria, and was received by the latter on the next day (the 28th) and mailed by it on the same day to the Fauquier National Bank. The check did not reach that bank until the next day (the 29th) when it gave "The Bank" credit for the amount of the check. On the night of the 28th of that month and before the check had been received by the Fauquier National Bank, receivers were appointed to and did take charge of the assets of "The Bank" (which was then insolvent, though not so known to its directors) at the suit of some of its directors and stockholders, for the purpose of winding up its affairs. The receivers collected from the Fauquier National Bank the said sum of $629, as part of the assets of "The Bank." There is no evidence of any general custom on the part of "The Bank" or of any of its branches, or of any special agreement between it and Miller, that if

checks deposited and credited as cash were not paid they were to be charged back to the depositor, or of any agreement that Miller could draw against them before they were collected.

It is well settled that where there is a general deposit of money in a bank, the title to or beneficial ownership of the money is vested in the bank, and the relation between it and the depositor is that of debtor and creditor. *Robinson* v. *Gardiner,* 18 Gratt. (59 Va.) 509-510, and cases cited; *Pendleton* v. *Com'th,* 110 Va. 229, 234, 65 S. E. 536. Tiffany on Banks and Banking, pp. 12, 13; 2 Morse on Banks and Banking (4th ed.) sec. 568.

It also seems to be well settled as a general rule that where a check drawn on a particular bank is presented to that bank for general deposit, and the bank gives the depositor credit therefor, the relation between the bank and the depositor is that of debtor and creditor, since the giving of credit under such circumstances is practically and legally the same as if the bank had paid the money to the depositor and had received it again on deposit. Tiffany on Banks and Banking, pp. 38-9; 2 Morse on Banks and Banking, sec. 569.

Where a check on one bank is deposited in another for collection, the ownership of the check is not transferred to the bank, but it is the agent of the depositor until collection is made, and not until then does it become the debtor of the depositor. But if the check is deposited in exchange for credit given the depositor, then the transaction is in effect a sale of the check to the bank, and it becomes the beneficial owner of the check and the debtor of the depositor. Tiffany on Banks and Banking, p. 29; 2 Morse on Banks and Banking, sec. 577.

Where a customer of a commercial bank deposits (using that word loosely) with it a check on another bank, endorsed by him without restriction, and the amount thereof

is credited to the depositor as so much cash, the bank reserving the right to charge it back if not paid, the question whether the title or beneficial ownership of the check pass to the bank or remain in the depositor in a controversy between them, is one upon which the courts are not agreed.

It was held by this court in *Fayette National Bank* v. *Summers,* 105 Va. 689, 54 S. E. 862, 7 L. R. A. (N. S.) 694, and in *Greensburg National Bank* v. *Syer & Co.,* 113 Va. 53, 73 S. E. 438, that in such a case the question of beneficial ownership of the check depends upon the intention of the parties. The instruction given in the first-named case, and which upon objection was held to be correct, was as follows: "The court instructs the jury that if they shall believe from the evidence that the plaintiff bank received the check which is the subject of this suit as a deposit to be treated as cash, and that such was the intention of the parties (Hughes and the bank) at the time the check was received and deposited, then title to said check passed to the bank at that time. But if the jury shall believe from the evidence that the parties intended that the bank should not receive said check as cash, but only as an agent for collection, then title to said check did not vest in the bank at the time of the deposit.

"The court further tells the jury the question as to whether the parties intended the check when deposited to be treated as cash or merely for collection is one of fact for the jury under all the facts and circumstances proven in the case relating thereto and throwing light thereon."

The instruction in the second-named case is the same in substance, and while it was given without objection, the opinion was expressed that it was a correct statement of law.

These cases are relied on by the appellant as conclusive in his favor—though it is denied that the precise question involved in this case was raised in either of those cases

by the instructions given. In this case it does not appear what the intention of the parties was, unless their intention can be gathered from the isolated transaction itself. There was no custom shown, nor any course of dealing between the parties proved, from which their intention could be inferred. Neither was there any agreement between them that the check was for collection and credit, or that when it was received and credited as cash the bank was to become the beneficial owner of it. The endorsement of the check by the depositor was general and accompanied by a letter directing it to be credited to his account. It was credited to his account, but being on a bank outside of the city of Alexandria, it was credited subject to payment, as the depositor knew generally from the notice printed on its deposit slips as well as from the slip he received notifying him of the character of the deposit made. Tiffany on Banks, &c., pp. 33-4; *South Park, &c., Co.* v. *Chicago, &c., Ry. Co.,* 75 Minn. 186, 77 N. W. 796.

In the case of *Fayette National Bank* v. *Summers, supra,* the court, as sustaining its conclusion that the instructions given in that case correctly propounded the law as applied to its facts, cited 2 Morse on Banks, &c., sec. 586 (4th ed.), and *National Bank* v. *Miller,* 77 Ala. 173 (54 Am. Rep. 50), and quoted from each. The language quoted from Morse is that "checks when deposited and credited do not become the property of the bank, even though the depositor has been allowed to check against the deposit before the paper is collected and the depositor can recover the check or other paper. The next paragraph of the section quoted, and which gives the reasons for the doctrine stated, is as follows: "When a depositor deposits a check on another bank, without any special contract, the property remains in him, and the bank is his agent until it has notice that the correspondent bank has received the money and credited it. If the deposit is made and credited

to cover an overdraft, or is drawn upon, the bank can hold the paper until the account is squared, but the property is in the customer. It is said that the endorsement of the check to the bank and credit on the books of the bank and on the pass-book are evidence of a contract by which the bank shall become owner of the paper; but (1) banks always claim and *exercise the right of charging to the depositor all such checks returned unpaid, which is not consistent with the theory of an understanding that the title passes absolutely."*

The language of the Alabama case quoted in *Fayette National Bank* v. *Summers* is as follows: "When a check is deposited it is taken generally for collection by the bank as the agent of the depositor, and the bank does not owe the amount until its collection is accomplished. It may be that if it is passed to the credit of the depositor and mingled with the general funds of the bank, it is *prima facie* a payment of deposit; but the bank may permit, as a matter of favor and convenience, checks to be drawn against it before payment—the depositor in the event of non-payment being responsible for the sums drawn—not by reason of his endorsement, the check not having ceased to be his property, but for money paid."

In the case of the *Greensburg National Bank* v. *Syer, &c., supra,* where the instruction given was substantially the same as the instruction given in *Fayette National Bank* v. *Summers,* this court said: "In the case of the *St. Louis, Etc., R. Co.* v. *Johnston,* 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683, the court said, speaking of the deposit of a draft in bank, that 'If there be no bargain that the property should be changed, the relation resembles that of principal and agent. Mere liberty to draw does not make out such a bargain.' And in the same case it was said that the fact that the draft was entered at its full value indicated that it was not discounted, but credited for convenience and in anticipation of payment."

The authorities relied on in *Fayette National Bank* v. *Summers, supra,* and *Greensburg National Bank* v. *Syer & Co., supra,* to sustain the decisions in those cases lay down the doctrine as stated by the reporter in the syllabus of the first-named case, that whether a bank receiving from a customer a check (on another bank) which it places to his credit (as cash) becomes the owner of the check or a mere agent for collection depends upon the intention of the parties, but ordinarily a check so deposited is taken for collection by the bank as agent of the depositor, and although the bank as a matter of favor or convenience may permit the depositor to draw against the check so deposited before payment, the depositor in the event of non-payment being responsible for the sums drawn, the bank does not thereby become the beneficial owner of the check as between the depositor and the bank, or its receivers where it closes its doors before the check is collected.

While, as before stated, the courts are not agreed upon this question, there is ample authority to sustain the doctrine of the cases cited.

Vice-Chancellor Pitney, now one of the justices of the Supreme Court of the United States, in *Perth Amboy Gas Light Co.* v. *Middlesex County Bank,* 60 N. J. Eq. 84, 45 Atl. Rep. 794, in discussing this question in a carefully considered opinion, says: "* * * where the deposit consists of checks or drafts drawn on a third party, whether a bank or an individual, the result may be (1) either an increase in the debt from the bank to the depositor; or (2) a mere bailment of the check or draft with the bank as an agent to collect the same for and on account of the depositor, and credit him with the amount collected. The actual result depends upon either what actually passes between the parties at the time or what the custom or practice prevailing between them are, and the situation of the account between the dealer and banker. If a depositor

deposits a check or draft on a third party, with the understanding either express or implied that he is to draw against it at once as if it were cash, and the bank agrees to accept it and treat it as cash and the depositor draws against it before the amount is realized by the bank, then it is properly treated as a deposit in cash, or if the depositor is already indebted to the bank and the deposit is received in whole or in partial payment the same result follows. But in the absence of an understanding or situation of this kind, it is a mere bailment." See also *National Com. Bank* v. *Miller, &c., supra,* 77 Ala. 168, 173-4, 54 Am. St. Rep. 50; *National Butchers, &c., Bank* v. *Hubbill,* 117 N. Y. 384, 393-396, 22 N. E. 1031, 7 L. R. A. 852, 15 Am. St. Rep. 515; *Beal, Recr. of Maverick Nat. Bank,* v. *City of Somerville,* 50 Fed. 647, 17 L. R. A. 291, 294-6, 1 C. C. A. 598; *Balbank* v. *Frelinghuysen, Recr.,* 15 Fed. 675, 681-4; *South Park, &c.,* v. *Chicago, &c., Ry. Co., supra.*

In this case, as before stated, there was neither general custom, course of dealing, nor special agreement from which to gather the intention of the depositor and the bank when the check was deposited. The sum credited was never drawn against by the depositor, nor did he have any authority to draw against it until collected, unless crediting it as cash, the bank reserving the right to charge it back if not paid, gave him the right to at once check against it. The bank, as a matter of fact, under the facts disclosed by the record, was not a holder of the check for value.

In this country, though the rule seems to be different in England, it is settled that the mere giving of credit to a depositor's account of a check does not constitute the bank a holder for value, but in order to have that effect the credit must be drawn upon. Tiffany on Banks and Banking, pp. 39-40, and cases cited; 7 Cyc. 929, and cases cited.

Upon the facts disclosed by the record, we are of opinion that "The Bank" was not the beneficial owner of the check

when it went into the hands of the receivers, and that as between the receivers and the plaintiff in error, the depositor, he is entitled to the proceeds of the check, and the trial court erred in not so deciding.

The decree complained of must, therefore, be reversed, and this court will enter such decree as the trial court ought to have entered.

This conclusion renders it unnecessary to consider the other assignment of error, which is based upon the hypothesis that the beneficial ownership of the check was in the depositor and not in "The Bank" when it closed its doors.

*Reversed.*