# Wytheville.

## T. A. WEBB, RECEIVER FOR THE BANK OF VIRGILINA v. K. W. O'GEARY, ADMINISTRATOR OF DENNIS O'GEARY, DECEASED.

### June 17, 1926.

1. BANKS AND BANKING—*Deposits—Title—Relationship of Debtor and Creditor.*—It is settled law that where a general deposit of money is made in a bank and the depositor receives credit for the same, the title to the money so deposited is vested in the bank and the depositor and the bank then occupy the position of creditor and debtor, respectively.

2. BANKS AND BANKING—*Deposits—General Deposits—Deposit of Check on Bank—Relationship of Debtor and Creditor.*—It is likewise true that where a person deposits a check on a certain bank with that bank as a general deposit, and receives credit for the same, the relation between the bank and the depositor is that of debtor and creditor. This proposition is based upon the fact that the crediting of the check to the depositor is legally and in effect the same as paying the money to him in cash and his thereupon depositing the cash with the bank.

3. BANKS AND BANKING—*Depositor as Creditor—Credit for the Deposit.*—It follows that a depositor cannot become a creditor of the bank, in the ordinary acceptation of the term, until it has given him credit for the amount deposited.

4. BANKS AND BANKING—*Insolvency—Check Deposited for Collection— Whether Relationship between the Bank and Depositor is that of Debtor and Creditor or of Principal and Agent—Case at Bar.*—A vendee delivered to the cashier of a bank his check on the bank, payable to the order of the vendor. The vendee had no money to his credit at the bank but delivered to the cashier a check of one T., payable to the vendee and endorsed by him with instructions to collect and place to his credit to meet the check which he had given the vendor. The vendor went to the bank on December 10th to get a check for the sum due him so that he could place the money in another bank, his reason for asking for a check was that he did not want to "tote the money" to the other bank. Instead of giving him a cashier's check or the vendee's check, the cashier filled out a check on his

bank payable to the vendor's order, and told the vendor to sign it. The cashier was subsequently sent to the penitentiary for a shortage in his accounts. On December 11th, on account of insolvency, the cashier's bank was closed and on presentation of the check to the other bank, that bank refused to receive it and informed the vendor of the insolvency of the cashier's bank. The insolvency of the bank was known to the cashier but not to the vendor.

*Held:* That the vendor never made a general deposit with the cashier's bank or received any credit for the vendee's check or the check of T., and that the relationship between the cashier's bank and the vendor was that of principal and agent and not that of debtor and creditor.

5. BANKS AND BANKING—*Direction to Bank to Collect a Certain Check and with the Proceeds to Pay Another Check Drawn on it—Equitable Assignment—Equity Regards that as Done which Ought to have been Done.*—Where money was derived from a check payable to a vendee who delivered it to a bank to provide a fund with which the bank was directed to pay a check of the vendee drawn in favor of the vendor, equity regards that as done which ought to have been done, and the vendee's check in favor of the vendor constituted an equitable assignment to the vendor of the proceeds of the check payable to the vendee and the bank never acquired any title to the check payable to the vendee or the proceeds thereof, but held the same as agent for the benefit of the vendor.

6. BANKS AND BANKING—*Mingling of Proceeds of Check for Collection with the Funds of the Bank—Lien Extended to the Whole Mass.*—Where a bank held the proceeds of a check as agent for the beneficial owner, being impressed with a trust, the mingling of the proceeds of the check with the general funds of the trustee bank does not defeat the title of the beneficiary, but extends the trust or lien to the whole mass of money.

7. BANKS AND BANKING—*Mingling of Proceeds of Check for Collection with the Funds of the Bank—Lien Extended to the Whole Mass—Case at Bar.*—The proceeds of a check of which petitioner was the beneficial owner, and to which the bank where it was placed for collection never acquired title, having been mingled with the general funds of the bank and an amount equal to the proceeds of the check having passed into the hands of its receiver, equity will permit petitioner to receive the amount of such proceeds out of the funds in the hands of the receiver.

Appeal from a decree of the Circuit Court of Halifax county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*M. B. Booker* and *John Martin,* for the appellants.

*Tho. H. Howerton* and *Buford & Raney,* for the appellees.

WEST, J., delivered the opinion of the court.

On December 1, 1923, Dennis O'Geary sold and conveyed to D. J. Cole a tract of land in Mecklenburg county, Virginia, for $9,000. In settlement for the land Cole paid O'Geary $100 in cash and left with T. G. Poole, cashier of the Bank of Virgilina, for O'Geary, his check on that bank, payable to O'Geary's order, for $8,900. Cole had no money to his credit in the bank, but he delivered to cashier Poole J. R. Thames' check on the Bank of Clarksville, payable to Cole's order and endorsed by him, for $8,900, with instructions to collect and place to his credit to meet the check which he had given O'Geary. O'Geary called at the bank on December 1st and endorsed the Cole check and presented it to the cashier "to get another check to carry away." The cashier told him the bank examiners were there looking over the books of the bank, gave him neither the cash nor a check, and told him to leave the check there and return a few days later.

The cashier did not give O'Geary a receipt for the Cole check, nor place the same, nor the proceeds of the Thames' check, to his credit, nor place the Thames' check to the credit of Cole. On December 4, 1923, the bank forwarded the Thames' check to the Union Bank of Richmond for collection, where it was placed to the credit of the Bank of Virgilina on December 6,

1923, but the check was not actually collected by the Union Bank until a few days later.

On December 10, 1923, O'Geary went again to the Bank of Virgilina to get a check for $8,900, so that he could place the money in the South Boston bank. His reason, he says, for asking for a check was that he did not want to "tote the money" to South Boston. Instead of giving him a cashier's check or the Cole check, the cashier, who was subsequently sent to the penitentiary for a shortage in his accounts as cashier, filled out a check on the Bank of Virgilina payable to O'Geary's order and told him to sign it and "carry the check anywhere I (he) wanted to," and it would be good for the money. He betrayed O'Geary's confidence by not giving him a cashier's check, as he should have done.

On December 11, 1923, on account of insolvency, the Bank of Virgilina was closed by the State Bank Examiner, and on December 12, 1923, T. A. Webb was appointed receiver by the Circuit Court of Halifax county.

On December 11, 1923, O'Geary presented his check for $8,900, which cashier Poole had him sign, to the Bank of South Boston. The bank refused to accept the check, and informed him that the Bank of Virgilina had been closed.

It is conceded that the Bank of Virgilina had been insolvent for six years and that its insolvency was at all times known to T. G. Poole, cashier, but it was unknown to Dennis O'Geary. It is not controverted that all the money on deposit with the bank was placed therein during its insolvency and that when the bank was closed there remained to its credit in the Union Bank $11,396.82, which was paid over to T. A. Webb, receiver.

On January 24, 1924, Dennis O'Geary filed his petition setting up a claim to a preferential payment of $8,900; and on the same day a decree was entered referring the case to James S. Easley, commissioner, to take and report certain accounts. Neither the complainants in the bill nor any other depositor of the Bank of Virgilina made a claim for a preference.

The commissioner, upon the evidence laid before him, found that Dennis O'Geary placed his money in the bank at a time when its insolvency was known to T. G. Poole, cashier, and unknown to Dennis O'Geary, and that the same facts were also true as to the other depositors; and therefore reported that Dennis O'Geary was a depositor in the Bank of Virgilina in the sum of $8,900 and should share pro rata with the other depositors in the distribution of the funds available for the payment of accounts due depositors.

In the meanwhile Dennis O'Geary departed this life, and K. W. O'Geary, his administrator, on the _____day of May, 1925, filed exceptions to the report of Commissioner Easley, on the ground that the commissioner should have reported that O'Geary was entitled to a lien or preference over the depositors or creditors of the Bank of Virgilina to the amount of $8,900, to be paid out of the assets in the hands of the receiver.

Upon the final hearing, the Circuit Court of Halifax county entered a decree sustaining the exceptions to the commissioner's report and directing T. A. Webb, receiver, out of the funds in his hands, to pay K. W. O'Geary, administrator, the sum of $8,900, with interest from December 10, 1923, till paid. From this decree an appeal was allowed to this court.

These are the questions for our consideration: Was Dennis O'Geary a general depositor in the Bank of

Virgilina, whereby the relation of creditor and debtor was created between him and the bank; or was the relation that of agent or trustee and *cestui que* trust? If the latter relation existed, is O'Geary's estate entitled to have its claim paid in full?

[1] It is settled law that where a general deposit of money is made in a bank and the depositor receives credit for the same, the title to the money so deposited is vested in the bank and the depositor and the bank then occupy the position of creditor and debtor, respectively. *Robinson* v. *Gardiner*, 18 Gratt. (59 Va.) 509-510 and cases cited; Tiffany on Banks and Banking, pp. 12-13; *Miller* v. *Norton*, 114 Va. 612, 77 S. E. 452.

[2] It is likewise true that where a person deposits a check on a certain bank with that bank as a general deposit, and receives credit for the same, the relation between the bank and the depositor is that of debtor and creditor. This proposition is based upon the fact that. the crediting of the check to the depositor is legally and in effect the same as paying the money to him in cash and his thereupon depositing the cash with the bank. 2 Morse on Banks and Banking, sec. 569; *Miller* v. *Norton, supra*, 612 (77 S. E. 452).

In *Miller* v. *Norton*, 114 Va. 612, 77 S. E. 453, the law is stated thus: "It also seems to be well settled as a general rule that where a check drawn on a particular bank is presented to that bank for general deposit, and the bank gives the depositor credit therefor, the relation between the bank and the depositor is that of debtor and creditor, since the giving of credit under such circumstances is practically and legally the same as if the bank had paid the money to the depositor and had received it again on deposit. Tiffany on Banks and Banking, pp. 38-39; 2 Morse on Banks and Banking, sec. 569."

[3] It follows that a depositor cannot become a creditor of the bank, in the ordinary acceptation of the term, until it has given him credit for the amount deposited.

[4] It plainly appears from the evidence that Dennis O'Geary has never made a general deposit of the $8,900 with the Bank of Virgilina, nor received any credit for the Cole check or the Thames' check. He said he did not intend to deposit the Cole check in the bank and did not fill up a deposit slip for that purpose. He was not, so far as the record shows, running a check account with the Bank of Virgilina at the time. He had money on interest-bearing certificates with the bank and was unwilling to increase his deposits therein. He went to the bank "to get another check to carry away" with him to the South Boston bank, in which he had already determined to place his money. While O'Geary's testimony is somewhat confused, it is clear from the whole evidence that he never intended to be and was not a depositor of the bank of Virgilina, as to the money in question.

[5] The money in question was derived from the Thames' check, which was delivered to the Bank of Virgilina to provide a fund with which the bank was directed to pay the Cole check drawn in favor of O'Geary. Equity regards that as done which ought to have been done, and Cole's check in favor of O'Geary constituted an equitable assignment of the proceeds of the Thames' check to O'Geary. *Federal Reserve Bank* v. *Peters*, 139 Va. 57, 123 S. E. 379. The bank never acquired any title to the Thames' check, or the proceeds thereof, but held the same as agent for the benefit of O'Geary.

In *Messenger* v. *Carroll Trust & Savings Bank*, 193 Iowa 608, 187 N. W. 545, the Moline Plow Company

sent a draft to the Carroll Trust and Savings Bank, at Carroll, with the instructions to collect and remit. The draft was drawn on the Swaney Company and was paid by a check on the Carroll Trust and Savings Bank. The court, in the course of its opinion, said: "It is the contention for the Moline Plow Company that the relation created between it and the bank was strictly that of principal and agent; whereas, the receiver contends that the transaction had created the relation of creditor and debtor only. The bank complied strictly with the directions of the claimant. It did not purport to open any account with the claimant, nor to deposit the proceeds to the credit of the claimant. It simply put such proceeds in the form of its own draft upon the Chicago bank for the purpose of remittance. The case at this point is ruled squarely by *Brown* v. *Sheldon State Bank*, 139 Iowa 83, 117 N. W. 289, and by our previous cases cited therein. The question is fully discussed in the *Brown Case*, and nothing can be gained by a repetition of the discussion here. Following such case, it must be held that the proceeds of the sight draft came into the hands of the bank as agent for the Moline Plow Company, and that the title thereto was at all times in the principal and not in the agent.

"We deem it clear that the net result of the transaction of payment by the Swaney Company and the receipt thereof by the collecting bank was the same as though the Swaney Company had drawn the currency into its own hands by means of check, and had thereupon delivered the same to the collecting bank in payment of the sight draft. Such is the holding of the cited cases."

In *State* v. *Bank of Commerce of Grand Island*, 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858, the court said:

"It is a recognized principle in this State that money collected by a bank for another on notes or drafts is in trust for the owner who is a preferred creditor in case the bank goes into liquidation."

[6] Being impressed with a trust, the mingling of the proceeds of the check with the general funds of the trustee bank does not defeat the title of the beneficiary, but extends the trust or lien to the whole mass of money. *Fed. Reserve Bank* v. *Peters*, 139 Va. 56, 123 S. E. 379; *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank*, 138 Va. 333, 121 S. E. 903, 37 A. L. R. 604.

In *Board of Supervisors* v. *Prince Edward-Lunenburg Bank, supra*, at p. 342 (121 S. E. 906), quoting from the opinion of the court in *Richardson* v. *New Orleans Deb. Red. Co.*, 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67, the court says: "If a banker takes $1,000 not his own, and mixes the sum with $10,000 of his own money, can the owner of the $1,000 reclaim it? Has he, in equity, a charge on the whole to the amount of his money which has gone into it? Formerly it was held that he had not. The equitable right of following misapplied money, it was said, depended on identifying it, the equity attaching to the very property misapplied. Money, it was said, had no earmarks and the tracing of the fund would fail. This view was manifestly inequitable and unjust, and so, finally, it was held that confusion by commingling does not destroy the equity, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion of the fund a priority of right over the other creditors of the possessor and wrongdoer." Citing and quoting from a number of cases of the highest authority sustaining such holding.

[7] The proceeds of the Thames check, of which O'Geary was the beneficial owner, and to which the Bank of Virgilina never acquired title, having been mingled with the general funds of the bank and an amount equal to the proceeds of the check having passed into the hands of its receiver, equity will permit O'Geary to receive the amount of such proceeds out of the funds in the hands of the receiver.

·The decree complained of is right and will be affirmed.

*Affirmed.*