# 𝔖taunton

## THE FIRST NATIONAL BANK OF DANVILLE, ETC. v. COMMERCIAL BANK AND TRUST COMPANY, ETC.

September 20, 1934.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Harris, Harvey & Brown,* for the appellants.

*Meade, Meade & Talbott,* for the appellees.

CHINN, J., delivered the opinion of the court.

On September 14, 1929, Commercial Bank and Trust Company of Danville, and J. S. Thompson, of Pittsylvania county, qualified in the circuit court of that county as com-

mittees of the estate of Mrs. Salina B. Motley, an insane person. Said committees executed bond, conditioned according to law, in the sum of $87,500 but no surety was required of them. As a result of certain litigation, on August 6, 1931, the executors of John J. Motley, the deceased husband of Mrs. Salina B. Motley, paid over to her said committees the sum of $50,000 by check drawn on the Planters Bank and Trust Company of Chatham, Va. Upon receipt of this check J. S. Thompson and C. L. Booth, trust officer of the Commercial Bank and Trust Company, went to Chatham and presented the check in person, and accepted in payment two checks of the Planters Bank and Trust Company—one for $40,000 drawn on the First National Bank of Danville and the other for $10,000 drawn on a Richmond bank. These checks were payable to the joint order of the committees. Thompson and Booth thereupon returned immediately to Danville and deposited the checks to the credit of the committees in the Commercial Bank and Trust Company. At the time of the deposit an ordinary deposit slip was made out by Mr. Booth, the trust officer, which did not differ in any way from the deposit slips in common use by the general depositors of the bank. This deposit was not, however, entered as a general deposit on the individual or general ledger of the bank, but was set up in the form of a receipt on a separate ledger kept by the trust department of the bank, reading as follows: "By amount received from C. M. Mahan and E. C. Hurt, Jr., executors of the will of John J. Motley, deceased, as per decree of the Circuit Court of Pittsylvania county, Virginia, dated August 1, 1931—$50,000." The ledger also showed the nature of the trust was, "as committee with J. S. Thompson for Mrs. Salina B. Motley." On this same day, August 6, 1931, the aforesaid checks for $40,000 and $10,000 respectively, were deposited to the credit of the Commercial Bank and Trust Company in the First and Merchants Bank of Richmond, Va. It also appears that on the same day disbursements were made out of the trust fund to pay money borrowed by the committees for

Mrs. Motley's benefit, attorney's fees allowed by the court, and other expenses, aggregating the sum of $15,180.90; and on September 14, 1931, other disbursements were made amounting to $2,673.13 leaving to the credit of said fund a net balance in the hands of the bank of $32,145.97. All the aforesaid disbursements were made by checks drawn over the joint signature of the committees, and charged against the fund on the trust ledger.

The Commercial Bank and Trust Company closed its doors on October 17, 1931; receivers were duly appointed; and the First National Bank of Danville qualified as joint committee with J. S. Thompson in the place and stead of the closed bank. An accounting of the outstanding debts and liabilities of the Commercial Bank and Trust Company was ordered by the Corporation Court of Danville to be taken by a special commissioner appointed for the purpose, and said committees filed their petition in the proceedings asserting that they are entitled to have the assets in the hands of the receivers of the closed bank impressed with a trust in favor of their ward's estate for the amount in the hands of the bank at the time it suspended, and praying that said trust be enforced. The receivers answered and evidence was taken. The special commissioner found against the claim to a preference, and exceptions were duly taken to his report. The corporation court thereupon sustained the commissioner's findings and allowed said committees only a general claim against the bank's receivers for $32,145.97, with 4% interest thereon from August 6, 1931, until October 17, 1931, and also awarded a judgment against the receivers in the sum of $500, which the court decided had been improperly charged against the fund by the Commercial Bank and Trust Company, co-committee, for commissions, thus making a total allowance on account of the claim of the committees of $32,645.97, with interest as aforesaid, without preference over the other creditors of the closed bank. From this decree, Mrs. Motley's committees have taken this appeal.

The right of a *cestui que trust* to follow his trust money or other property into the hands of the receivers of an insolvent bank is based upon rights of property. It is not based upon a debt due and owing, nor upon the ground of compensation for loss of the property or fund, but upon the fundamental principle that the funds are still the property of the *cestui que trust* and he is entitled to reclaim them whether in their original or some altered form. In other words, the underlying theory is that the title to the trust fund did not pass to the bank and the claimant is therefore only recovering his own. (See note and cases cited, 82 A. L. R., pages 47-51.)

Accordingly, it is generally held that when there is a general deposit of funds in a bank, the relation of debtor and creditor at once arises, and the money becomes the property of the bank; and in that case, the *cestui que trust* or other owner has no claim upon the assets of the bank superior to that of the bank's general creditors. But when the deposit is special in its nature, or is made wrongfully, or without lawful authority on the part of the trustee or other fiduciary, there is no relationship of debtor and creditor between the bank and the beneficial owner, and the title to the fund does not, therefore, pass to the bank but remains in the *cestui que trust* who is entitled to follow them into the hands of the receivers upon the bank's insolvency. These principles are fully recognized in *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank*, 138 Va. 333, 121 S. E. 903, 906, 37 A. L. R. 604. It is contended by the appellants that the Commercial Bank and Trust Company acted wrongfully in depositing with itself the trust funds which came into its hands as committee for Mrs. Motley, and her representatives are, therefore, entitled to recover said funds from the receivers as against the general creditors of the bank.

Appellees contend, on the other hand, that the Commercial Bank and Trust Company, being chartered as a banking corporation with power to engage in the trust or

fiduciary business as well as the general banking business, had the right to make a general deposit of said funds with itself as a bank of discount and deposit, thereby creating the relation of debtor and creditor, and so far as the bank's assets are concerned, Mrs. Motley's estate stands on the same basis as any other creditor.

Although some of the decisions in other jurisdictions relied on by counsel seem to support their contention, we find ourselves unable to apply that doctrine to the case now before us.

It appears from the record that when the funds in question were placed in the bank it was understood by Mr. Thompson, the bank's co-committee, and the bank's officials that the balance remaining after making the disbursements hereinbefore mentioned was to be held by the bank only until it could be invested in securities prescribed by the statute for the investment of such funds. There was no understanding that the money should be loaned to the bank or that it should be placed on general deposit, and the receipt of the money was entered only on the trust ledger. Mr. Thompson, for his part, understood that the money was to be held by the trust department until proper investment could be found for it, and that the affairs of that department were kept separate from the other department of the bank. The money was never invested according to Mr. Thompson's understanding and as contemplated by the bank's officers when it was deposited, but immediately upon its receipt was appropriated by the bank to its own use. Under these circumstances we do not think the bank, in the proper exercise of the trust imposed upon it, could rightly make a general deposit of the said trust fund with itself, and by commingling said funds with its own in its ordinary commercial transactions change the existing fiduciary relation to that of debtor and creditor and then claim it had thereby acquired title to said .fund. The bank, though authorized to act in both a fiduciary and commercial capacity, constituted but a single corporate entity. It could not

rightly destroy the trust relation and claim the fiduciary funds in question had become its own on the debtor and creditor theory merely by the process, figuratively speaking, of shifting such funds from one hand to the other. As aptly said by Justice Cordoza in the case of *Genesee Wesleyan Seminary* v. *U. S. Fidelity & Guaranty Co.*, 247 N. Y. 52, 159 N. E. 720, 722, 56 A. L. R. 964: "A trust imposed by law is not to be divested at the instant of its creation and silently, as if by sleight of hand, converted into a loan." The above mentioned case was an action brought by the Seminary against the Fidelity and Guaranty Company, as surety on the fidelity bond of one Holden as treasurer of the Seminary. In addition to being treasurer of the Seminary, Holden was likewise a private banker, and as such the sole owner of the banking business conducted under the name "Bank of Honeoye Falls, A. M. Holden, Banker." When Holden collected money as treasurer of the Seminary he placed it on deposit with himself as banker. His bank became insolvent and he filed a petition in bankruptcy. At the date of the bankruptcy there was $23,743 on deposit to his credit as treasurer of the Seminary. It also appears that Holden loaned to corporations in which he was a stockholder and officer a large part of the deposits in his bank. While the only question at issue was whether Holden had been guilty of conduct amounting to larceny or embezzlement so as to make the surety company liable on his bond, in discussing Holden's duties as treasurer and banker in the premises, Justice Cordoza made the following observations which we think are pertinent. He said:

"We think the plaintiff's deposit should have been kept apart from others and held by the treasurer as a fund subject to a trust. Deposits in a bank or with a banker are classified often as general or special. The presumption is said to be that a deposit is general. The relation then created is that of debtor and creditor as upon any other loan. A special deposit is sometimes said to be equivalent to a bailment. It is not always of that order. Such a de-

posit may exist where the duty of the depositary is to hold, not the identical bills or coins, but an equivalent sum, to be kept intact, however, for the use of the depositor. *Woodhouse* v. *Crandall*, 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; *People* v. *City Bank*, 96 N. Y. 32. A bank accepting such a deposit is chargeable with the responsibility, civil or criminal, like any other trustee, if it uses for itself what was to be held in trust for someone else. The fund may not be drawn down by loans or other withdrawals below the level of the trust."

It is argued that Mrs. Motley's committees could have legally deposited the funds in question in another bank, and in the absence of statutory inhibition, why was it not entirely proper for the bank to deposit said funds with itself? The right on the part of the committee, exercising due care in its selection, to deposit the trust funds in another bank of discount and deposit so long as they were kept separate from their own funds cannot be denied. Neither does there seem any good reason why the Commercial Bank and Trust Company could not have deposited said fund with itself, provided, whether kept in its own vaults or in another banking institution, the same was properly earmarked according to its true ownership. These are entirely different propositions, however, from that of mingling the trust funds committed to its care with its own, and using the same in its general banking business as was done by the fiduciary bank in this case.

Since this case arose the General Assembly of 1932 (Laws 1932, ch. 352) has added a new provision to the statutes on the subject, Code Sec. 4149 (69), specifically providing under what conditions funds received or held in the trust department of a bank or trust company waiting investment or distribution may be deposited in the commercial or savings department to the credit of the bank or trust department. It is further argued that although the statute at the time this case arose did not expressly authorize a bank doing both a general banking and a trust business to deposit

fiduciary funds coming to its hands with itself, the implication to be drawn from the amendment to the statute is, that before such amendment the legislature intended such bank to have the authority. Considering the language used in the amendment in connection with the previous provisions of the statute, it seems to us the implication might be as well to the contrary, since the amendment only states the conditions on which a bank may now acquire such authority. But however that may be, we do not think it was ever within the contemplation of the legislature that the trust department of a bank should be authorized to transfer trust funds held in a fiduciary capacity to the commercial side of the institution to be mingled with its own funds. Moreover, since the statute (Code Sec. 5431) specifically prescribes the securities in which fiduciaries may invest funds held by them in a fiduciary capacity, it would hardly seem reasonable to suppose that the banking statute intended to authorize banks to lend or transfer fiduciary funds in its hands to itself without any security whatever.

Our conclusion is, therefore, that the action of the bank in making a general deposit with itself of the trust funds committed to its care and appropriating them to its own use as it did, though not amounting to fraud, was wrongful and without authority on the part of the bank, and there having been no contract relation between the beneficiary and said bank with reference to the so-called deposit and use of said funds, the bank acquired no title to the same, and Mrs. Motley's representatives are, therefore, entitled to follow said funds into the hands of the receivers of the closed bank.

It is contended on the part of the receivers that in order to reclaim the trust fund in question, it is necessary that the beneficiary or his representatives shall point out particularly the fund, or the property into which it has been converted. Although there are some cases to that effect, the modern and prevailing doctrine is, that it is not necessary, in order to follow and recover a trust fund from the

receivers of an insolvent bank, to identify the specific property into which it has been converted where the fund has been mingled with the other funds of the bank. (See numerous authorities cited in note, 82 A. L. R. page 125 *et seq.*) Under this doctrine it is well settled in Virginia as in nearly all jurisdictions, that the mingling of trust funds with the general funds of the fiduciary bank does not extinguish the trust, or defeat the right of the beneficiary to follow and recover the trust fund or its equivalent, but extends the trust or lien to the whole mass of money in the receivers' hands. *Federal Reserve Bank* v. *Peters,* 139 Va. 45, 123 S. E. 379,. 42 A. L. R. 742; *Webb* v. *O'Geary,* 145 Va. 356, 133 S. E. 568; *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank, supra;* note and cases cited, 82 A. L. R. page 132, *et seq.* In the last named case, Judge Sims, in delivering the opinion of the court, quotes with approval from the case of *Richardson* v. *New Orleans Deb. Red. Co.,* 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67, in part as follows:

" 'If a banker takes $1,000, not his own, and mixes the sum with $10,000 of his own money, can the owner of the $1,000 reclaim it? Has he, in equity, a charge on the whole to the amount of his money which has gone into it? Formerly, it was held that he had not. The equitable right of following misapplied money, it was said, depended on identifying it, the equity attaching to the very property misapplied. Money, it was said, had no earmarks, and the tracing of the fund would fail. This view was manifestly inequitable and unjust, and so, finally, it was held that confusion by commingling does not destroy the equity, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion of the fund a priority of right over the other creditors of the possessor and wrongdoer'—Citing and quoting from a number of cases of the highest authority sustaining such holding." See, also, *Webb* v. *O'Geary, supra,* where the same quotation is used.

In *Evans* v. *French,* 222 Mo. App. 990, 6 S. W. (2d.) 655, 658, the court stated the rule as follows:

"In cases where a trust fund is mingled with the general assets of the bank, and the entire fund so mingled is used in the general business of the bank, the bank cannot take advantage of its own wrong in mingling said funds, and insist that the claimant of the trust fund show the specific fund claimed is in the hands of the commission in charge of the assets of the bank, but on account of the wrongful act of the bank in mingling such funds and thus making it impossible to trace and identify the trust fund, the entire assets of the bank will be subject to a lien in favor of the claimant of the trust fund." See, also, *First Nat. Bank* v. *Sanford,* 62 Mo. App. 394; *Johnson* v. *Farmers' Bank,* 223 Mo. App. 513, 11 S. W. (2d.) 1090; *Jarvis* v. *Hammons,* 32 Ariz. 444, 259 Pac. 886; *Stults* v. *Gordon,* 89 Ind. App. 611, 167 N. E. 564; *Leach* v. *Sanborn State Bank,* 203 Iowa 401, 212 N. W. 694, 51 A. L. R. 900; *Kime* v. *Ladd,* 112 Kan. 603, 211 Pac. 628.

We nowhere find the rule more clearly and concisely stated than in the recent case of *Schumacher* v. *Harriett* (C. C. A.) 52 Fed. (2d) 817, 818, 82 A. L. R. 1, where Judge Parker, speaking for the court, says:

"The rule is well settled that where property or funds which are the subject of a trust are used by a bank in such a way as merely to decrease its liabilities and not to augment its assets, no charge upon the assets arises in favor of the *cestui que trust.* (Citing authorities.) On the other hand, it is equally well settled that, where a bank acting as trustee mingles a trust fund with its other funds, the common fund resulting is impressed with a trust to the amount of the trust fund which has been so commingled and lost its identity; and in such case the *cestui que trust* is entitled to have the trust declared and the trust fund separated from the other funds, even though the bank subsequently to the commingling may have added to and made payments from the common fund, as the presumption is that it respected the trust and did not make payment from the trust property. A limitation upon the rule is that the amount for which the

trust is declared may not exceed the smallest amount which the common fund contained subsequent to the commingling of the trust funds. *Knatchbull* v. *Hallett,* 13 Ch. D. 696; *Central Nat. Bank* v. *Conn. Mut. Life Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693; *Poisson* v. *Williams* (D. C.) 15 Fed. (2d) 582; *Brennan* v. *Tillinghast* (C. C. A. 6th) 201 Fed. 609, 612; *Empire State Surety Co.* v. *Carroll* (C. C. A. 8th) 194 Fed. 593, 605." The doctrine above stated, that all withdrawals and disbursements by the bank are presumed to be as its own portion of the mixed fund, since it is presumed that the trustee acted rightfully and left the trust funds intact rather than that he violated the trust, and that any balance remaining in the common fund and passing into the hands of the receivers is presumed to include or to be a part of the trust funds and subject to the trust, is sustained by the overwhelming weight of authority. See note and cases cited 82 A. L. R. page 141 *et seq.*

Some courts hold that the presumption as to the preservation of the trust fund, where payments are made out of the common fund in which trust money has been commingled with funds of the trustee bank, applies only to the cash in the bank itself. Another view, however, supported by many decisions, is that the presumption in question applies not only to the cash and cash items in the insolvent bank itself but also the credits or deposits in its favor in other banks. And this is a view taken in the case of *Schumacher* v. *Harriett, supra,* where after stating that the doctrine of tracing trust funds has been much liberalized, it is said: "Under modern banking conditions, the rule as stated should be held to apply to cash items received by a bank under a trust agreement as well as to cash so received. Such an item for all practical purposes differs not at all from currency. It increases the cash funds of the bank just as much as does a deposit of currency. If the bank cashes it and covers the proceeds into its vaults, the augmentation, of course, is apparent. If, however, the bank treats the cash item as its own and uses it for other banking purposes, such as pay-

ment of debts or creating credits in other banks, the cash in the vaults of the bank is relieved to that extent; and, where a trust with respect to a cash item is involved, it must be presumed that the intention was that cash remaining in the vaults of the bank is to be substituted under the trust.

"And even if we follow the checks into the accounts of the New York and Richmond banks we do not think that the position of the receiver is helped. As so deposited they unquestionably augmented the assets of the bank, for it appears that on the day the checks were received and for a number of days thereafter, the amount to the credit of the failed bank in these accounts was largely in excess of the checks deposited. The checks, therefore, even if traced into these accounts, were used to increase the assets of the bank and not merely to extinguish its liabilities. These credits in correspondent banks, constituted its immediate available assets; and a use of one of them for the purposes of business relieved to that extent the use of the others. All were equally under control of the bank; and if one was exhausted, there is every reason for holding that the others were subjected to the trust, on the principle of the commingling of trust funds, that there is for holding that the remaining currency is subject to the trust, although the identical currency which the *cestui que trust* deposited may have been paid out. In the complexities of modern banking, cash, cash items, and credit balances react upon each other so rapidly that in ordinary cases it is vain to attempt to distinguish between them. * * * There is as little reason for distinguishing between cash, cash items, and deposits in other banks in the application of the equitable doctrine, as there would be in distinguishing between moneys kept in different vaults of the same bank. The fact that the account in the Richmond and New York banks was subsequently exhausted has, therefore, no bearing upon the question involved."

With the reasoning and principles above stated we are in full accord.

For other cases to same effect, see also *Myers* v. *Fed. Reserve Bank,* 101 Fla. 407, 134 So. 600; *City Bank* v. *Hart,* 102 Fla. 529, 136 So. 446; *Lane* v. *First National Bank,* 131 Or. 350, 270 Pac. 476, 281 Pac. 172, 283 Pac. 17; *Blythe* v. *Kujawa,* 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330; *Fed. Reserve Bank* v. *Millspaugh,* 314 Mo. 1, 282 S. W. 706; *Yellowstone County* v. *First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596; *People ex rel. Russell* v. *Iuka State Bank,* 229 Ill. App. 4; *State* v. *Bank of Commerce,* 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858; *First Nat. Bank* v. *Union Trust Co.* (1913 Tex. Civ. App.) 155 S. W. 989; *People* v. *Auburn State Bank,* 215 Ill. App. 133.

 It is argued that the fund in question cannot be recovered because it was dissipated by the bank. It appears that when the bank suspended there was a balance in its favor with the First and Merchants National Bank of Richmond in the sum of $28,223.77, of which sum the First and Merchants Bank applied $20,699 to the payment of a note of the Commercial Bank and Trust Company held by the First and Merchants National Bank and the balance of said deposit amounting to $7,524.77 was credited on a note of the Commercial Bank and Trust Company payable jointly to the First and Merchants National Bank of Richmond and the First National Bank of Danville. It appears, however, that there came into the hands of the receivers cash and cash items of $28,946.24 and also a net balance of cash on deposit with other banks of $10,703.77, making cash or its equivalent coming into the receivers' hands $39,650.

It also seems to be conceded that the cash in the vault of the bank and its cash on deposit with other banks subject to check was never, after the receipt of Mrs. Motley's trust fund, and up to the time the bank suspended, less than the total of all the trust funds on hand for investment or distribution, and that the cash and cash assets, including credit balances with other banks, which actually came into the re-

ceivers' hands exceeded the credit balance of Mrs. Motley's trust fund.

Under these circumstances the fact that the Richmond bank appropriated the balance it held to the credit of the suspended bank towards the payment of the latter bank's debt, does not affect Mrs. Motley's right to recover the trust money belonging to her. As held by the above authorities, she is entitled to have a trust in her favor impressed upon the entire mass of assets in the receivers' hands for the full amount of her claim, it appearing that the common fund with which it was commingled, to which the presumption of preservation attaches, was never subsequent to the commingling less than the amount of said trust fund.

We are therefore of the opinion that Mrs. Motley's committees are entitled to recover from the receivers of the Commercial Bank and Trust Company, to be paid out of the assets of said bank in the receivers' hands, the sum of $32,145.97 with interest thereon at 6% from the 17th day of October, 1931, until paid, and also recover of the receivers the further sum of $500 representing one-half of the amount wrongfully charged against the trust estate of Mrs. Motley on account of commissions, as held by the lower court, with interest thereon at 6% from the 17th day of October, 1931, until paid.

For the reasons stated, the decree of the Corporation Court of the city of Danville will be reversed, and the cause remanded to the said court to be therein proceeded with according to the views expressed in this opinion.

*Reversed and remanded.*

HUDGINS, J., dissenting.