# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CENTRAL NATIONAL BANK OF RICHMOND V. FIRST AND
MERCHANTS NATIONAL BANK OF RICHMOND.

October 7, 1938.

Record No. 1964.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Thomas B. Gay* and *Lewis F. Powell, Jr.,* for the plaintiff in error.

*Page & Leary* and *Patrick A. Gibson,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The facts in this case were agreed to by a stipulation in writing. So far as material, they are as follows:

On or about April 1, 1936, two men, who later proved to be forgers, opened what purported to be a novelty shop in

the Broad-Grace Building, in the city of Richmond, and at about the same time they opened a checking account with the First and Merchants National Bank of Richmond, in the name of John J. Clancy; a checking account with the State-Planters Bank and Trust Company, also in the name of John J. Clancy; a checking account with the Central National Bank of Richmond, in the name of Fred B. Reeves; and a checking account with the Bank of Commerce and Trusts, also in the name of Fred B. Reeves. All of these accounts were small, ranging usually from $200 to $500, with normal fluctuations, until the perpetration of the forgeries hereinafter set forth. Through the normal conduct of their ostensible business and bank transactions, these parties created and established an acquaintance and standing with their several bank connections.

Subsequently, and by methods unknown, they ascertained that T. Justin Moore (hereinafter designated as "Moore") carried checking accounts with both the Central National Bank of Richmond (hereinafter designated as "Central") and with the First and Merchants National Bank of Richmond (hereinafter designated as "First"), and they stole from the office of Moore a number of his blank forms of checks on each of the said banks, which blanks were thereafter utilized by them in the forgeries hereinafter mentioned.

At the time of the respective payments of the forged checks, Moore, a prominent attorney, carried a large and substantial checking account, amounting to more than $16,-000 with Central, and a smaller checking account of approximately $1,200 with First.

Under date of May 22, 1936, Moore's signature as drawer, was forged on a check drawn on his account with Central in the amount of $8,500, which said check was made payable to cash, and was endorsed as follows by typewriter: "First and Merchants National Bank, Deposit to the credit of T. Justin Moore." This check was presented to First on the same day for deposit to Moore's credit, was accepted by it, and credited that day to the checking account maintained by Moore with First. Thereafter, on May 23rd, this $8,500

check, bearing the stamp of First, "All prior endorsements guaranteed," was collected by First from Central through the Richmond clearing house.

On May 23, 1936, two additional checks were forged on Moore's account with Central in the amounts of $4,500 and $3,475, respectively. The $4,500 check was made payable to the order of "B. R. Swift," and was endorsed "B. R. Swift, John J. Clancy, For deposit only to John J. Clancy," and was deposited to the credit of John J. Clancy in his account with First. The check for $3,475 (not included in this suit), was deposited to the account of Fred B. Reeves with the Bank of Commerce and Trusts. These checks, bearing the stamp guaranteeing all prior endorsements, were collected from Central through the clearing house.

Subsequent to the deposit of the $8,500 check to Moore's credit with First, and on May 23, 1936, Moore's signature was forged on two checks drawn on his account with First in the sums of $3,585 and $4,564, respectively. The $3,585 check was deposited to Reeves' account with Central on May 23, 1936, and was thereafter collected by Central from First through the clearing house on May 25, 1936. The check for $4,564 was deposited on May 23, 1936, in the State-Planters Bank and Trust Company, Richmond, to the credit of John J. Clancy, thereafter being collected from First through the clearing house on May 25, 1936. Both of these forged checks were charged against Moore's account with First without his knowledge or consent.

The checking account of Fred B. Reeves with Central contained a balance to his credit of $112.34 on May 23, 1936, when the forged check for $3,585 was deposited by him in the said account, thereby increasing his balance with Central to $3,697.34. Subsequently, on May 26, Reeves withdrew from his account with Central the sum of $3,001 by two checks, leaving a balance of $597.34 to his credit with Central at the time the forgeries were discovered.

The checking account of John J. Clancy with First had a balance to his credit of $107.24 on May 23, 1936, when the forged check of $4,500 was deposited to his credit in that

bank. Subsequent to the deposit of the $4,500, Clancy, on May 26th, withdrew from his account with First the sum of $4,100 by two checks, thus leaving to his credit with First a balance of $507.24 at the time the forgeries were discovered.

The foregoing transactions are indicated by the following diagram:

Central National Bank account in the name of
T. JUSTIN MOORE

| (2) CHECK $4,500 Deposited May 23, 1936 in First & Merchants Nat. Bank to credit of JOHN J. CLANCY. | (1) CHECK $8,500 Deposited May 22, 1936 in First & Merchants Nat. Bank and credited on same day to account of T. JUSTIN MOORE Collected from Central May 23, 1936 | (3) CHECK $3,475 Deposited May 23, 1936 in Bank of Commerce and Trusts to credit of FRED B. REEVES. |
|---|---|---|
| Bal. $507.24 | | Bal. $483.72 |

| (1A) CHECK $3,585 Deposited May 23, 1936 in Central National Bank to credit of FRED B. REEVES Collected from First May 25, 1936. | (1B) CHECK $4,564 Deposited May 23, 1936 in State-Planters Bank & Trust Company to credit of JOHN J. CLANCY Collected from First May 25, 1936. |
|---|---|
| Bal. $597.34 | Bal. ? |

All the above mentioned forgeries were first discovered on May 27, 1936, after Reeves and Clancy had absconded. Central thereupon notified First of the forgery of the $8,500 check and of the $4,500 check.

On May 29th, after a conference between Moore and representatives of the four banks above mentioned, Central restored to Moore's account with that bank the entire sum charged against his account as a result of the two forgeries, including the sum of $8,500, which had been transferred

from Moore's account with Central to Moore's account with First, as aforesaid.

In restoring the $8,500 to Moore's account, Central claims to have acted in reliance upon, and in consideration of the giving to Central by Moore of his check for $8,500, dated May 29, 1936, and drawn on First. The said check was drawn by Moore on First in good faith, and accepted by Central in good faith in reliance upon the belief that First was legally liable to honor the check, and further in reliance upon the statement by an officer of First, which was interpreted by Central and Moore as indicating a recognition of such legal liability. First thereafter, on June 1st, dishonored and refused to pay the check of $8,500, and also, at all times since, has disclaimed all liability whatsoever to Moore or Central, on account of its having honored and paid the two forged checks on Moore's account in the amounts of $3,585 and $4,564, respectively. Subsequent thereto, Moore assigned to Central in consideration of the restoration to him by Central of the entire $8,500 in question, all rights and claims which he may have had against First on account of, or arising out of, the payment by First of the two forged checks on his account.

First also declined and refused to return or restore to Central the balance of $507.24 remaining to the credit of Clancy in First, which represented a part of the sum of $4,500 transferred from Central to First by the forged check in that amount heretofore mentioned. Moore had likewise assigned all his right and claim therein to Central.

Neither Moore nor any of the banks mentioned herein have recovered, collected, or received any sums from the two forgers, or either of them.

On or about May 28, 1936, Central instituted an attachment proceeding in the Circuit Court of the city of Richmond against Fred B. Reeves and E. C. Pitt, as principal defendants, and the Bank of Commerce and Trusts, as codefendant, wherein a principal indebtedness of $3,475 arising out of the aforesaid forgery of a check in that amount, was asserted. The Bank of Commerce and Trusts has filed

with the clerk of the said court a statement showing that it is holding the sum of $483.72, pending the outcome of said attachment proceedings, that sum being the balance remaining in that bank to the credit of Reeves. (This amount is not in controversy in this suit, and is sought to be recovered in a separate action to which First is not a party.)

At the same time, Central instituted another attachment proceeding in the Circuit Court of the city of Richmond against "John J. Clancy or John Y. Clancy and B. R. Swift," as principal defendants, and the First and Merchants National Bank and the State-Planters Bank and Trust Company, as co-defendants, wherein a principal indebtedness of $4,500 arising out of the aforesaid forgery of a check in that amount, was asserted. First filed with the circuit court its formal answer, offering to pay into the said court, subject to its order, the sum of $507.24, being the balance remaining in that bank to the credit of John J. Clancy.

No answer has been filed by, or on behalf of the State-Planters Bank and Trust Company. It has admitted no liability with respect to a balance alleged to be remaining with it to the credit of Clancy, nor has it been made a party to this suit. It will be remembered that the proceeds of the $4,564 check were deposited to Clancy's credit in this bank.

No action has been taken in either of the attachment proceedings, other than that above described and the usual notices of publication.

Central agreed, at the time of the trial of this case below, not to prosecute the last mentioned attachment suit to a final judgment in the circuit court until the final disposition of this case. Moreover, Central, at all times, has recognized, and here admits, that if it recovers in this suit the balance of $507.24, remaining in First to the credit of Clancy, it will not be entitled to a second recovery thereof in the said attachment suit, and in such event, agrees to dismiss the same as to First.

It was further stipulated that both Central and First acted in absolute good faith and without actual negligence in any respect, and the right of either party to an appeal

should not be prejudiced or precluded by reason of the stipulation and agreement of facts entered into.

Central filed a notice of motion for judgment against First in the amount of $10,000. First filed its grounds of defense, denying all liability to Central except to the extent of $351, with interest thereon from May 29, 1936, which amount it paid into court. This sum represents the difference between the proceeds from the forged $8,500 check accepted by First, and placed to Moore's account, and the sum of the two forged checks for $3,585 and $4,564, which First charged against the said $8,500.

A jury was waived, and upon the foregoing stipulation of facts, all matters of law and fact were submitted to the trial judge. To a judgment holding that Central was authorized to recover only the sum of $351, with interest as aforesaid, a writ of error was allowed.

Central contends that it was entitled to recover the total sum of $8,409.90, which includes the aforesaid $351. This aggregate amount is computed as follows: The sum of $8,500 deposited to Moore's account in First, plus the sum of $507.24, the balance remaining in First to the credit of Clancy, subject to a deduction of $597.34, the balance remaining in Central to the credit of Reeves.

Central concedes that the claim of First to the $597.34, remaining proceeds of the $3,585 forgery, deposited with Central to the credit of Reeves, stands upon the same right and principle as the claim of Central to the $507.24, the remaining proceeds of the $4,500 forgery, deposited with First to the credit of Clancy.

Central asserts its claim in its own right, as assignee of Moore, and on principles of the law of negligence.

First denies the right of Central to a further recovery in any capacity. It also alleges that Central has elected, by attachment proceedings, to compensate itself for the loss sustained, and is estopped to prosecute this action.

As assignee of Moore Central alleges that its failure to detect the forgery of the $8,500 check did not occasion the loss because that amount was thereby placed to Moore's

account in First; that Moore lost nothing by the transfer as long as the $8,500 remained in the latter bank; that the latter bank accepted the $8,500 as a deposit and placed it to the credit of Moore and it became liable to Moore for said sum. Thus, it is claimed, Moore had a cause of action against First which arose out of his relation to that bank as a depositor, and a valid assignment of that cause of action having been executed to Central, it now possesses the same rights that Moore formerly had.

The position of First is that none of Moore's money was ever transferred to it by reason of the forgery of the $8,500 check because he never assented to the transfer; that Central paid its own money on the forged check which to no extent affected Moore's account, and that the controversy here is one in which Moore had no concern because the amount withdrawn from his account in Central by reason of the forgery had been fully restored and therefore he had no rights to assign.

First contends that it owes Central in its own right, nothing save the $351 which it has already tendered to the court. It asserts that Central paid its own money to First upon the $8,500 forgery and that it was held, not as a deposit of Central and not under any other contractual relation to Central or any one else but that it held the money under a *quasi*-contract for the benefit of Central. First alleges that it has changed its position in relation thereto and has paid it out, with the exception of the $351, and that to that extent alone can it be made to respond in damages in this action which is bound to be based upon unjust enrichment. It disclaims guilt of any negligence or breach of duty to Central. It asserts that the error of Central was the primary and contributing cause for the payment of the subsequent forgeries on First.

The attachments are being held in abeyance pending the final outcome of the present case.

We are limited to a consideration of the $8,500 forged check paid by Central, the two subsequent forged checks of $3,585 and $4,564 paid by First, and to the disposition of

the $507.24, remaining in First to the credit of Clancy, and the sum of $597.34, remaining in Central to the credit of Reeves, arising respectively out of the $4,500 forged check paid by Central and the $3,585 check paid by First.

The State-Planters Bank and Trust Company, as we have stated, is not a party to this proceeding.

Not one of the numerous cases cited in the able and exhaustive briefs cover facts exactly similar to those here involved. We deem it unnecessary to discuss all of them. The cases cited are only valuable for the general principles therein expressed. A correct decision here must depend upon adherence to fundamental principles.

Different facts and factors are involved in the several instances, and different principles are required to be applied by reason thereof. The difficulty lies in the application of the law to the circumstances surrounding the possession and disposition of the proceeds from the separate forgeries. A contrast of the several statements of facts involved, and a review of the respective principles of law applicable thereto will, we think, illustrate and approve the conclusion we have reached.

The general rule is conceded that a depositor's funds in a bank are unaffected by any unauthorized payment. If a bank pays out money to the holder of a check, upon which the name of its depositor is forged, it is simply no payment as between the bank and the depositor; the account between the bank and the depositor and the legal liability of the bank remain just the same as if the pretended payment had not been made. The pretended payment does not diminish the funds of the depositor. 9 C. J. Secundum, Banks and Banking, sections 267, 333 and 356; *First National Bank* v. *Whitman,* 94 U. S. 343, 24 L. Ed. 229; *Hardy* v. *Chesapeake Bank,* 51 Md. 562, 34 Am. Rep. 325; *National Bank* v. *Nolting,* 94 Va. 263, 26 S. E. 826; 5 Michie, Banks and Banking, pages 499, 502.

In the Virginia Negotiable Instruments Law, Virginia Code 1936, section 5585, it is provided:

"Where a signature is forged or made without authority of the person whose signature it purports to be it is wholly inoperative, and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party thereto can be acquired through or under such signature unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

■■ The authorities are in unequivocal and unanimous agreement that a bank, in paying a forged check, must be considered as making the payment out of its own funds. In the payment by a bank of a forged check, it acts at its own peril, and not that of the depositor.

■ None of Moore's money in Central was ever transferred from Central to First by virtue of the two forged checks for $8,500 and $4,500. Moore's account at Central was in no way touched, or affected thereby. As stated in the language of the brief of counsel for First: "The deposit of the $8,500 forged check by the forgers to Moore's account at First was without his knowledge or assent, its collection and credit to his account by First was without his knowledge or assent; and its payment and charge against his account at Central was without his knowledge or assent; and none of these acts taken singly or together, either added to, diminished, or in the slightest degree, affected Moore's original rights. He had at the end, as he had at the beginning of these acts, the same unchanged and undiminished right,—the right to a credit to his account at Central of $8,500."

After the forgeries were discovered, Central restored to Moore's account the full amount that had been illegally withdrawn from that bank, and at the same time Central received the assignment from Moore of any rights he had as a depositor of the $8,500 in First. It was, of course, impossible for Moore to have had the same $8,500 in First that he also had in Central.

■ We conclude that Moore had no interest in the $8,500 in First, and, therefore, no right or interest, which he could

assign to Central. If Central is entitled to a recovery, it must be in its own right.

It is well settled that when money has been transferred from one bank to another by virtue of a forgery, there can be no recovery against the latter when the transferred money has been checked out by the person in whose name the proceeds of the forgery were deposited before a discovery of the forgery. *Security Commercial & Savings Bank* v. *Southern Trust & Commerce Bank,* 74 Cal. App. 734, 241 P. 945.

The facts in the above case may be briefly stated as follows:

Thing Brothers maintained a checking account with the appellee bank; the firm's signature was forged to two checks drawn on the bank, and were payable to E. E. Snyder, and these checks were sent to appellant bank by mail for collection. Appellant did not forward the money to the forger, the payee in the checks, until the checks had been honored, and credit transferred to it by the bank on which they were drawn. The court reversed the judgment of the lower court, which had found in favor of the drawee bank, and said [page 952]: " * * * We have left merely a case of a bank receiving checks for collection, sending them through the clearing house in the ordinary manner, the drawee bank honoring and paying them without detecting or using the means within its hands to detect the fact that they were forgeries, and now asking the collecting bank to reimburse it, notwithstanding that the collecting bank would suffer the loss because of having paid the money out, relying upon the drawee's payment of the same. * * * "

The drawee of a forged check is bound, at his peril, to know the drawer's signature and cannot, after the payment of such check to an innocent holder for value, recover the amount of such payment from the latter. *Price* v. *Neal* (1762), 3 Burr. 1354, 97 Eng. Reprint 871; *U. S.* v. *Chase National Bank,* 252 U. S. 485, 40 S. Ct. 361, 64 L. Ed. 675, 10 A. L. R. 1401.

In the case of *Price* v. *Neal, supra,* an action was brought by the plaintiff against Neal for money had and received. Two bills were forged, and paid by the plaintiff to the defendant, and he sought to recover from the defendant the amount thereof. There the defendant had taken the bills for value and in good faith, and it was held that he was not required to return the money, because he was a holder for value. The opinion embodied two other important principles. First, that it would not "be thought unconscientious in the defendant to retain this money, when he has once received it upon a bill of exchange indorsed to him for a fair and valuable consideration, which he had *bona fide* paid, without the least privity or suspicion of any forgery." And again, "the plaintiff cannot recover the money, unless it be against conscience in the defendant to retain it." Second, "It was incumbent upon the plaintiff to be satisfied 'that the bill drawn upon him was in the drawer's hand' before he accepted or paid it," and even if there were no neglect on the part of the plaintiff or defendant, "there is no reason to throw off the loss from one innocent man upon another innocent man."

Although Central contends that it should recover in its own right because First was not a holder for value, under the principle of *Price* v. *Neal, supra,* we do not think that the facts show that First was a holder at all. If First was never a holder of the forged checks, that portion of the above principle cannot be applied.

First assumed the relation of a collecting agent and acquired the check for collection. The intention of First to take the check for collection was expressed in the deposit slip used in making the deposit in First. A provision there was "that items on Richmond are credited, subject to actual payment through the Richmond Clearing House," and another provision was "that this bank shall have the right to charge back to the depositor's account any item for which actual payment is not received."

In *Miller* v. *Norton et als.*, 114 Va. 609, 77 S. E. 452, the second and third syllabi clearly state the rule in Virginia and most jurisdictions. It is stated thus:

"Where a check on one bank is deposited in another for collection, the ownership of the check is not transferred to the receiving bank, but it is the agent of the depositor until collection is made, and not until then does it become the debtor of the depositor. But if the check is deposited in exchange for credit given the depositor, then the transaction is in effect a sale of the check to the bank, and it becomes the beneficial owner of the check and the debtor of the depositor.

"Where a customer deposited in a bank a check on an out-of-town bank, and the bank credited his account with the amount of the check, and the deposit slip delivered to the customer contained the statement that items on out-of-town banks are credited subject to payment, and there was neither general custom, course of dealing, nor special agreement, from which to gather the intention of the depositor and the bank when the check was deposited, and the sum credited was never drawn against by the depositor and he had no authority to draw against it until collected, unless crediting it as cash (the bank reserving the right to charge it back if not paid), gave him the right to check at once against it, the deposit was a mere bailment, and the title to the check did not pass to the bank when the deposit was made."

Other Virginia cases are: *Fayette National Bank* v. *Summers*, 105 Va. 689, 54 S. E. 862, 7 L. R. A., N. S., 694; *Chase & Co.* v. *Norfolk National Bank*, 151 Va. 1040, 145 S. E. 725; *McAuley* v. *Morris Plan Bank*, 155 Va. 777, 156 S. E. 418.

In 7 Am. Jur., Banks, section 449, the general rule where credit is given and the right is given to charge back dishonored paper is stated in this language:

"Where commercial paper is deposited for collection—'for collection' being used in its legal sense—title to the paper remains in the depositor, even though the face value

of such paper is entered as a deposit credit to his account. The bank may treat such a credit as provisional if the paper is afterwards dishonored, and it may cancel the credit. Thus, in the case of paper sent by one bank to another for collection, title does not pass to the receiving bank, even though it credits the remitter with the amount thereof as cash and so informs the remitter. That the title remains in the depositor is especially true if the credit is entered upon the agreement that it is subject to payment of the paper and that it may be charged off in case of the dishonor of the paper. Even the fact that a bank receiving commercial paper for collection permits the holder to draw the amount of it before the collection is made does not of necessity change the relationship of the parties to the transaction or prevent the collecting bank, upon dishonor of the paper, from charging it back to the customer. The bank may, as a matter of favor and convenience, permit checks to be drawn against such paper before payment, since the depositor, in the event of nonpayment, is responsible for the sums drawn, not by reason of his indorsement, the paper not having ceased to be his property, but for money paid."

Again in 7 Am. Jur., Banks, section 456, the rule in some states is that where the deposit slip provides that checks are credited conditionally, this prevents the passing of title to the checks to the receiving bank.

Even if it be assumed that First was not a collecting agent in this instance by reason of the unusual manner in which it received the check, certainly title to the check which had been forged would not have passed to it from the forger. Code, section 5585. *Hillman* v. *Cornett,* 137 Va. 200, 119 S. E. 74.

We think it is clear that First was not a holder of the check in a legal sense, and that the circumstances negative any idea that the title thereto passed to it as a holder.

The effect of the transactions did not create a relation of depositor between Central and First. There was no express contractual relation between the two banks. First owed Central no contractual obligation, except that grow-

ing out of a *quasi*-contract. Unjust enrichment is the only theory upon which Central can found its action in its own right, and, in order to succeed, it must show that First retains money, which, in equity, belongs to Central.

In the light of the foregoing principles, we now examine the facts and circumstances surrounding the several forgeries.

It will be noted that the $4,500 check was made payable to the order of "B. R. Swift," bore the endorsement "B. R. Swift-John J. Clancy," and was deposited to the credit of John J. Clancy in First. Before any of the forgeries were discovered, Clancy drew checks in his own name on this account in First for all of his deposits there except $507.24. First paid out this money on the order of the depositor in whose name it was deposited, and there is no suggestion of a forgery in the subsequent transactions. Here, First paid out money deposited to the credit of Clancy on Clancy's order.

A similar situation exists with reference to the $3,585 forgery on First, which was deposited in. Central to the credit of Fred B. Reeves. Reeves himself withdrew from the deposit to his credit all except the sum of $597.34.

Central concedes that it has no just claim to the full amount of the proceeds of the $4,500 check; but contends that it is entitled only to the balance remaining to Clancy's account, in the sum of $507.24. For the same reason and upon the same principle, it concedes that First has a like claim to the balance of $597.34 remaining in Central from the proceeds of the forgery against First.

A like situation exists with reference to the $3,475 forgery, which was deposited in the Bank of Commerce and Trusts, to the credit of Reeves. Reeves withdrew from that deposit all except the sum of $483.72, the amount claimed by Central. This amount, however, is not in controversy in this suit, but is sought to be recovered in a separate action to which First is not a party.

In the above respects, the circumstances clearly and sharply differentiate the facts from the handling of the

proceeds of the $8,500 check deposited in First to the credit of Moore.

Central recognizes that First is not liable for the amount paid out on its depositor's check against his deposit. There was no tortious act in permitting such withdrawals. Though a deposit be made from the proceeds of a forgery, if withdrawals therefrom be made before a discovery of the forgery, no error is to be charged against the bank receiving the proceeds of the forgery as a deposit, and permitting such withdrawals.

Consider next the circumstances surrounding the $8,500 check, and the disposition of the proceeds therefrom. This check was made payable to the order of cash, and was endorsed for deposit in First to the credit of T. Justin Moore. When the check was presented by First, it was paid by Central, and the money represented thereby, or credit therefor, was transferred to First, its receipt being admitted by First. The nature of the endorsement on the check undoubtedly lulled the paying bank into a sense of security, in that the money or credit of its depositor was being transferred to a solvent bank, where it was available to the same depositor from whose account it was attempted to be taken. The transfer was as effective, so far as the two banks were concerned, as if the actual money had been physically transferred, and the books of each bank showed the effect of the transfer. Before a discovery of the forgery, First could not have denied to Moore, as the named depositor, the right to withdraw same. If it had been so withdrawn, First would have been without fault. If it had been deposited to the credit of any other named person, such other named person might likewise have withdrawn same without liability against First; but it could not be paid out on an order forged in the name of the person to whose credit it was held without liability. If it was paid out on a forged check, the bank must be considered as making the payment out of its own funds.

The payment of the forged checks by Central did not affect Moore's account with Central. Central paid out

its own money. This principle applies with equal force to the payment of forged checks by First. The forgery of checks upon Moore's account with First did not legally affect his account with First, either with respect to any deposit he had himself made there, or to any other deposit that had been made there for his benefit or account. A consistent application of the rule necessarily requires a holding that First, in paying out money on a forgery, paid out its own money.

The effect of the transfer of the proceeds of the $8,500 check was to create a relation between the two banks in the nature of an equitable *quasi*-contractual obligation on the part of First to hold the money safely for the account of the real owner. First had received, and was in the possession of, money of another, which it had no right to retain as against the true owner, or to dissipate by its own error. Since the money did not belong to Moore, or to First, the latter was the recipient of an unjust enrichment.

The principles applicable to the restitution of money held and received as an unjust enrichment are recognized and observed in Virginia and in the courts of many other States. Generally stated, the rule is that when money has been paid under a mistake of fact, it cannot be recovered where such payment has been made for value, or has caused a change in the position of the payee, and the payee has not been guilty of tortious conduct in receiving, retaining, or disposing of the money.

In *Hibbs* v. *First National Bank*, 133 Va. 94, 112 S. E. 669, 673, 25 A. L. R. 120, this is stated:

"The principle upon which a right of recovery is based, in the case of money paid by mistake of fact, is well settled. The right of recovery, where it exists, is based upon the promise to return the money which the law implies, irrespective of any actual promise, and even against the refusal to make it, whenever the circumstances are such that *ex aequo et bono* the money should be paid back, but in such case only. *Norfolk* v. *Norfolk County*, 120 Va. 356, 91 S. E. 820; *Lawson's Ex'r* v. *Lawson*, 16 Gratt. (57 Va.)

230, 80 Am. Dec. 702; *Rinehart* v. *Pirkey,* 126 Va. 346, 101 S. E. 353; 2 R. C. L. sec. 38, pp. 784, 785, sec. 8, and pp. 749, 750; 6 R. C. L. sec. 7, pp. 588, 589; *Moses* v. *MacFarlen,* 2 Burrows, 1012; 3 Pomeroy's Eq. Jur. (3d Ed.) sec. 1238; *Bend* v. *Hoyt,* 13 Pet. (38 U. S.) 263, 10 L. Ed. 154. Accordingly, it is well settled that money paid under a mistake of fact cannot be recovered back where the payment has caused such a change in the position of the payee that it would be unjust to require him to refund. 21 R. C. L. sec. 201, p. 170; 2 Elliott on Contracts, sec. 1390; *Grand Lodge, A. O. U. W.* v. *Towne,* 136 Minn. 72, 161 N. W. 403, L. R. A. 1917E, 344, and note pp. 353 *et seq.; Walker* v. *Conant,* 65 Mich. 194, 31 N. W. 786."

The only change of circumstances affecting First by reason of the $8,500 check, was the apparent credit to the deposit of Moore. The words "unjust enrichment" imply an altered situation; but a change of circumstances · occasioned solely by receipt of the enrichment does not alone justify the right of the receiver to retain what he has thereby acquired. Every principle of equity, good conscience, justice and the equitable *quasi*-contract itself demands that the property be held for, or returned to the true owner, unless value is paid therefor, or the property is lost or destroyed without fault of the recipient. To defeat a recovery, after the receipt of an injust enrichment, the circumstances must be such as to make it inequitable to require restitution, and such a change of circumstances must not be caused by tortious dealing with the subject-matter by the party unjustly enriched.

In Restatement of the Law of Restitution, dealing with "change of circumstances," it is said in section 69, and repeated in section 142:

"(1) The right of a person to restitution from another because of a benefit received is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution.

"(2) Change of circumstances may be a defense or a partial defense if the conduct of the recipient was not tortious and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant.

"(3) Change of circumstances is not a defense if

"(a) the conduct of the recipient in obtaining, retaining or dealing with the subject matter was tortious, or * * * ."

In a note appended to section 142, *supra,* it is further said at page 575:

"Tortious conduct. Change of circumstances is not a defense to a person who, however innocently, has been guilty of tortious conduct in receiving, retaining or disposing of the subject matter."

■ If First had followed the directions on the check, and had held the money regardless of the forgery to Moore's credit, there would not have been any subsequent change in its circumstances, by reason of any act of Central, for subsequent to the receipt of the money by First, there was no act on the part of Central justifying a further change in the circumstances of any one. First, in honoring the checks forged in the name of Moore, was guilty of negligence in law. Central in no respect participated in that error or default. First paid out its own money when it honored the forged checks against Moore's account with it for the respective sums of $3,585 and $4,564. Under the principle hereinbefore stated, it had no more right to charge those two checks to the proceeds from the $8,500 forgery than it had a right to charge them against the original $1,200 deposit of Moore in First, or to divide the charge against the two funds.

■ The action of Central in paying the $8,500 forged check, upon the condition that it was to be deposited to the credit of Moore in First, caused no loss of that money. While it so remained without the further negligence of either of the banks, neither one of them lost anything. It was the action of First in permitting the forger to withdraw a portion of the money in its possession which caused the loss.

The subsequent withdrawal of a portion of the money, leaving only $351 in First, made a change in circumstances occasioned by the error of First.

Nor does the stipulation that both Central and First acted "without negligence in any respect," bind the parties to an agreement that First was not tortious. Central denies an agreement to any such construction.

First does not even contend in its brief that its conduct was without fault, or that Central has stipulated itself out of court. It relies on the facts stated in the stipulation to defeat recovery, and not on any stipulated conclusion as to the effect of the facts. It contends that if the parties were both in fault, on the principle of *"In pari delicto potior est conditio defendentis,"* Central cannot recover.

Since the action is based entirely upon the alleged wrongful act of First in paying out money alleged to belong to Central, it could not have been intended to agree that First was without fault. The reference to the good faith of the parties was made simply for the purpose of showing that they were each innocent of any wilful or intentional default or wrongdoing.

We are concerned with the substance and intent of the stipulation rather than its form. We are asked to construe the legal effect of the facts stipulated, not a stipulated conclusion of law.

The acts of the forgers were entirely separate and distinct in time and in the manner of perpetration. The circumstances attending each transaction were actually different. The parties were neither equally innocent, nor equally in fault.

The negligence of First was not the legitimate sequence of the negligence of Central. The loss did not follow as a direct and immediate consequence of the negligence of Central. The parties were independent actors. It was, at the least, an intervening act on the part of First, which was a direct and immediate cause of the loss.

It must be admitted First was legally liable to Central for the $8,500 from the time it was deposited in First on

May 23rd until the latter honored the forgeries amounting to $8,149 on May 25th. It cannot successfully be denied that until the forgeries for $8,149 had been honored, Central had a right to recover the full amount. The only cir-cumstance to defeat recovery is the subsequent default of First in paying the checks for $8,149 on forgeries drawn upon it. If this be accepted as a defense, then First is excused from its liability to Central by reason of First's illegal acts and default.

Such a conclusion not only offends our sense of justice and fair dealing, but is, as we view it, contrary to sound principles of law. The default of Central did not occasion any loss. The default of First put the money beyond the reach of its true owner. The two defaults when weighed against each other will not balance equally on the scales of justice.

To sustain the contention of First, would be, in effect, to hold that money secured by forgery and placed in the hands of an innocent party becomes a homeless wanderer without a custodian and without an owner or master, with no one responsible for its use or conversion, and no one liable for its appropriation or misappropriation. All equi-table and *quasi*-contractual obligations would be disregarded. Its possession would be treated as a gift without any restric-tion or limitation upon its disposal. The hitherto applied principles relating to unjust enrichment would be ignored or discarded.

There is no merit in the contention that Central is not entitled to prosecute this action because it undertook to pursue other remedies and relief for the liability as-serted in the several attachment proceedings, or because of the seizure of the $597.34, remaining in that bank to the credit of Reeves. These actions did not constitute an elec-tion of remedies.

The records of the attachment proceedings filed as ex-hibits in this case do not show that those proceedings either specifically or alone involved the proceeds of the $8,500 forgery. There is not involved a question of a choice be-

tween two inconsistent positions, nor of the affirmance or disaffirmance of a position. Neither can it be said that the parties to the several actions are the same, nor that the same relief is sought. The remedies in the several actions are not inconsistent. The rights of First were not affected or prejudiced thereby.

The seizure of the $597.34 was nothing but an effort to reduce the loss. It was a credit transaction on the books of Central.

Our conclusion from the entire situation may be briefly and concisely summed up as follows:

Central, under a mistake, sent its money to First, there to be deposited to the credit of Moore. It was the duty of First so to keep the money, or to return it. If, instead of doing either, First, by its own error, paid the money out to a third party, who was not entitled to receive it, First is liable for a mistake for which Central was not responsible.

For the foregoing reasons, we are of opinion that, The Central National Bank of Richmond, in its own right, is entitled to recover from The First and Merchants National Bank of Richmond, the sum of $8,500, plus $507.24, remaining to the credit of John J. Clancy in First, subject to a credit of $597.34, remaining in Central to the credit of Fred B. Reeves, or the aggregate net amount of $8,409.90.

The judgment of the trial court is, therefore, reversed, and final judgment will here be entered for the plaintiff in error for the sum of $8,409.90, to the part payment of which shall be applied the sum of $351, heretofore tendered and paid into the trial court by the defendant in error, with interest on the principal amount, less the sum of $351, from May 29, 1936, until paid, and the costs of this proceeding.

*Reversed.*