**J.J.B. HILLIARD, W.L. Lyons, Inc., Plaintiff,**

v.

**Gary and Catherine FOX, Defendants.**

Civ. A. No. 87–0285–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

April 30, 1990.

James R. Hodges, Abingdon, Va., for plaintiff.

Charlie R. Jessee, Abingdon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on the plaintiff's and the defendants' cross-motions for summary judgment. The court has jurisdiction of the case pursuant to 28 U.S.C. § 1332.

### FACTUAL BACKGROUND [1]

The plaintiff, J.J.B. Hilliard, W.L. Lyons, Inc. ("Hilliard") is a stockbrokerage firm. T. Bryant Terry, Jr. ("Terry"), an employee of Hilliard, contacted defendant Gary Fox in either late January or early February of 1987 in order to discuss Gary and Catherine Fox's investments.

During their discussion, Terry mistakenly informed Mr. Fox that the market value

---

1. The facts contained herein are uncontested by the parties except where noted otherwise.

of the 2,000 shares of Gibson Cryogenics, Inc. common stock which the Foxes owned was over ten dollars a share. Terry had quoted the market value of a share of Gibson C.R. Company common stock; the actual market value of the Foxes' shares was less than one dollar a share. Based on the erroneous valuation of the shares given by Terry, Mr. Fox directed that the 2,000 shares be sold.

Terry executed a sale of 2,000 shares of Gibson C.R. Company common stock at a price of $10.25 per share for 1,500 shares and $10.50 per share for the remaining 500 shares. He then remitted the proceeds of the sale, $20,625, less a commission of $421.80, to the Foxes on February 10, 1987. The Foxes delivered the certificates of their 2,000 shares of Gibson Cryogenics, Inc. common stock to Hilliard.

In early April of the same year, Hilliard discovered its mistake and requested that the Foxes return the amount paid them. Hilliard alleges that the Foxes agreed to return the money but have failed to do so. On October 28, 1987, Hilliard filed the complaint in the instant case seeking a money judgment against the Foxes in the amount of $19,877.20, plus interest from February 10, 1987 and court costs. Hilliard has tendered to the court the stock certificates of the 2,000 shares of Gibson Cryogenics, Inc. common stock.

## ANALYSIS

■ There was an oral contract between Hilliard, acting through Terry, and Mr. Fox that called for Hilliard to act as the Foxes' agent in selling the Foxes' 2000 shares of Gibson Cryogenics, Inc. common stock for a price that was to exceed ten dollars a share.[2] Their contract was based on a mutual mistake of fact regarding the market price of the stock; as a result of Terry's admitted mistake, both parties believed

that the price was that of a stock with a similar name, which was substantially higher than the actual price.

The sale of the stock never took place, although the broker contracted to sell shares of stock in another company, mistakenly thinking that they were the same as the customer's shares. The contract between Hilliard and Mr. Fox was clearly voidable because of the mistake of fact. *See* Restatement (Second) on Contracts, § 152 (1981). Hilliard has voided the contract by requesting the return of the proceeds and by tendering the stock certificates to the court.

### Restitution

■ The plaintiff asserts that it has a right to payment of money from the defendants by way of restitution and that there is no genuine issue of fact regarding the exercise of that right.

Virginia has long recognized the right to recover money paid by mistake of fact. *W.B. Hibbs & Co. v. First Nat. Bank of Alexandria*, 133 Va. 94, 105–6, 112 S.E. 669, 673 (1922). The right "is based upon the promise to return the money which the law implies, irrespective of any actual promise, and even against the refusal to make it, whenever the circumstances are such that *ex aequo et bono* the money should be paid back, but in such case only." *Id.* Formerly, this right was enforced by an action of assumpsit for money had and received. Michie's Jurisprudence of Virginia and West Virginia *Assumpsit* §§ 2, 17 (1981). Although that action has been abolished by Virginia, the right may, nonetheless, be asserted by a motion for judgment. *Id.*

The specific application of this right to the situation present in the instant case has been recognized by the Restatement of Restitution as follows: "A person who has

---

**2.** The defendants, in their brief, appear to allege that Mr. Fox thought he was selling his stock directly to Hilliard, rather than having Hilliard sell the stock as an agent. When one receives goods from another for resale to a third person, whether he is an agent or a buyer depends upon whether the parties have agreed that he is acting primarily for the benefit of the one delivering

the goods or primarily for his own benefit. Restatement (Second) Agency § 14J (1958). If it is primarily for the benefit of the one delivering the goods, he is acting as an agent. *Id.* Mr. Fox's own statements show that he understood that Terry, representing Hilliard, was to be acting in the Foxes' best interest, *see* Fox Deposition at 10–11, and therefore as their agent.

paid money to another because of an erroneous belief induced by a mistake of fact that in so doing he is performing a contract with the other which is not subject to avoidance, is entitled to restitution of the amount so paid if the transaction is voidable by either party because of the mistake and is avoided." Restatement of Restitution § 16 (1937).[3]

The court in *Hibbs* explicitly failed to address the question of whether the negligence of the payor would bar recovery. *Hibbs*, 133 Va. at 108, 112 S.E. at 674. However, the court in *Virginia Ins. Rating Bur. v. Com.*, 186 Va. 270, 283, 42 S.E.2d 419, 425 (1947), held that if the mistake was the result of the forgetfulness or inadvertence of the payor, then recovery was not barred. This is in accord with the Restatement's view that negligence of the payor does not bar recovery. *See* Restatement on Restitution § 16 comment b, § 59.

Hilliard paid the money in question to the Foxes because of the erroneous belief that he was performing the contract he had with Mr. Fox to remit to him the proceeds of the sale of the Gibson Cryogenics common stock. Therefore, Hilliard has a right to restitution of the money, even if the payment was made because of its negligence.

The court, on the basis of *Virginia Insurance Rating Bureau*, rejects the defendants' public policy argument that because certain professionals, such as stockbrokers, are held to a higher standard of care than others, they should be denied the right of restitution when money was paid because of a mistake of fact caused by their failure to meet that standard.

### Change of circumstances

The Foxes claim that, prior to the demand of Hilliard that they return the money, they "disbursed" the money remitted to them, investing most of it in Virginia Oil & Refinery Company, Inc., which is now a defunct corporation. They assert that their change in position, resulting from the investment and its loss in value, terminates any right of restitution that Hilliard may have against them. Hilliard, on the other hand, asserts that this change in position should not terminate its right to restitution because the investment was not "caused" by the receipt of the money and that no evidence has been submitted showing that the investment would not have been made anyway.

The Supreme Court of Appeals of Virginia, in *Central Nat. Bank of Richmond v. First & Merchants Nat. Bank of Richmond*, 171 Va. 289, 312–13, 198 S.E. 883, 893 (1938), quoted with approval section 69 of the Restatement of Restitution as follows: "The right of a person to restitution from another because of a benefit received is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution."

■ The issue to be addressed is whether the investment of money mistakenly received and the investment's subsequent decline in value constitute such a change in position as to terminate or diminish the plaintiff's right to restitution. That issue is directly answered by neither the Restatement nor any reported Virginia cases. Furthermore, the court has failed to find any American cases directly addressing the issue. Thus, the issue appears to be one of first impression.

Although not directly addressed by the Restatement, the commentary contained in the Restatement provides helpful guidance. It provides that "[a]ny change of circumstances which would cause ... the recipient entire or partial loss if the claimant were to obtain full restitution, is such a change as prevents full restitution...." Restatement of Restitution § 142 comment b. Thus, the primary rule is that if repayment will cause the recipient loss, restitu-

**3.** The Supreme Court of Appeals of Virginia has cited the Restatement of Restitution as authority. *See Cooper v. Greenberg*, 191 Va. 495, 503, 61 S.E.2d 875, 879 (1950); *Maryland Casualty Co. v. Aetna Casualty & Surety Co.*, 191 Va. 225, 232, 60 S.E.2d 876, 879 (1950); *Central Nat. Bank of Richmond v. First & Merchants Nat. Bank*, 171 Va. 289, 312–13, 198 S.E. 883, 893 (1938).

tion is barred to the extent that such loss would occur. *Id.* at comment f.

The commentary notes two situations where restitution would not cause a loss. The first is where the money was used for the payment of debts incurred prior to its receipt. *Id.* The second, to which there is a limited exception, is where the money was used for payment of living expenses, business expenses[4], or gifts. *Id.* These situations are alike in that the money received was used to confer a net benefit on the recipient; thus, repayment will not normally cause the recipient any net loss—he will merely be returned to *status quo ante.* Conversely, where the recipient has received no net benefit from the payment, there is no duty of restitution. *Cf. id.* (in discussing a situation involving a principal and his agent, the commentary asserts that because the principal "received no net benefit from the payment," there was no duty of restitution).

The investing of money does not confer an immediate benefit upon the investor. Rather, one invests in the hope of receiving benefits in the future. Likewise, a decline in the value of an investment does not reflect consumption by or a benefit conferred upon the investor. Therefore, the investing of money received and the subsequent decline in value of the investment appear to be a change of circumstances which would diminish the right to restitution by the amount of the decline.[5]

■ The plaintiff raises the issue of "cause": whether the receipt of the money caused or induced the defendants to make the investment. It asserts that if the defendants would have made the investment anyway using other sources for the neces-

sary funds, then the investment does not constitute a change of circumstances justifying the termination or diminution of the right to restitution.

In most situations where the change of circumstances doctrine has been applied to terminate the right to restitution, the making of the payment had caused or, more precisely, induced the change in position; however, it is significant that the Restatement has avoided any reference to "cause." Annotation, *Restitution—Payment Under Mistake,* 40 A.L.R.2d 997, 1003 (1955). This lack of a "cause" requirement allows the change of circumstances doctrine to apply when specific chattels have been mistakenly received and subsequently lost or stolen even though their loss or theft is not "caused" by their previous receipt. Restatement of Restitution § 142 comment b. At least one commentator has concluded that the change of circumstances doctrine should apply also to money which is mistakenly received and subsequently lost or stolen. 40 A.L.R.2d at 1003 (citing G. Costigan, *Change of Position as a Defense in Quasi–Contracts,* 20 Harv. L. Rev. 205, 212 (1912)).

The annotation cited above, in discussing the issue, appears to find a common theme in the loss or theft of the money mistakenly received, its deposit in a bank that later fails, its investment in bonds or stock of enterprises which later become insolvent, and its investment in a house which is subsequently destroyed by fire, storm, or the public enemy. *Id.* The common theme is that the recipient no longer has the money, has received no benefit from it, and through no fault of his own, cannot get it. *See id.* at 1002. The annotation concludes

---

4. The exception for the payment of business expenses has no application in the instant case even though the business venture may have ultimately used the proceeds invested in it for the payment of business expenses. From the Foxes' perspective, the investment in the business venture was a capital asset and not the payment of business expenses. The following example further clarifies this point. An investor purchasing stock from an issuing corporation is purchasing a capital asset even though the corporation uses the proceeds from that stock sale to pay its expenses.

5. An example of the application of this principle is the following. One is mistakenly paid $5000 through no fault of his own and has no notice that he is not entitled to the money. He uses all of the money to purchase publicly traded common stock. At the time that he becomes aware of the mistake, the market value of the stock which he has purchased has declined to $3,000. Any right of restitution that the payor has is limited to $3,000.

that "[i]f the true basis of the action for money had and received is that the defendant has money which belongs to the plaintiff, in equity and good conscience," then the presence of any of the situations noted above should constitute an adequate defense to that action. *Id.*

The court concurs in the annotation's conclusion and further concludes that it follows from that principle that the loss in value of an investment in a business venture[6], which investment was made with the money mistakenly received, also constitutes a change of circumstances diminishing the right to restitution by the amount of the loss.[7] Therefore, the plaintiff's motion for summary judgment is denied.

■ The defendants also seek summary judgment on the basis that the change of circumstances bars any recovery by the plaintiff. Once a claimant has proved that the recipient has received money from him under circumstances which would create a right to restitution, then the recipient has the burden of proving a sufficient change of circumstances that would make it inequitable for that right to be exercised. Restatement of Restitution § 142 comment g. Thus, the assertion by the recipient of a change of circumstances is an affirmative defense, of which the recipient has both the burden of coming forward with the evidence and the risk of non-persuasion.

The court concludes that whether the money received by the defendants was ultimately invested is to be determined by the common law rules of tracing. Thus, the defendants have the burden of proving by common law rules of tracing that the money mistakenly received from the plaintiff was invested in the business venture.

"[S]ummary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (citation omitted). Before granting a motion for directed verdict made by the party carrying the burden of proof on a particular issue, the court must find that there is sufficient evidence proving that issue and that there is insufficient evidence to permit a contrary finding. *See, e.g., Johnson v. Pa. Bureau of Corrections,* 661 F.Supp. 425 (W.D.Pa.1987). Thus, because the defendants carry the burden of proving the change of circumstances defense at trial, they must submit sufficient evidence proving their defense in order to prevail on their motion for summary judgment.

The defendants have not submitted evidence sufficient to prove by common law tracing rules the amount of the money mistakenly received from Hilliard which was ultimately invested in the business venture. Furthermore, they have not shown that the change of circumstances defense should apply to a loss of value occurring after they received notice of the mistake and they also have not shown what portion of the loss of value took place prior to notice. Finally, the defendants failed to address the plaintiff's alternative claim that the defendants promised to pay back the money. Therefore, the court denies the defendants motion for summary judgment.

## CONCLUSION

One who pays money to another based upon the mistaken belief, induced by a mistake of fact, that he is under a contractual duty to pay that money and then avoids that contract, has the right to restitution of that money. However, that right may be diminished or terminated if a change of circumstances has occurred that would make the exercise of that right against the

---

**6.** If the recipient received the money without fault, then the recipient is under no duty of care with regard to the money until he has knowledge that he is not entitled to retain the money. *Cf.* Restatement of Restitution § 142 comment b (no such duty of care with regard to chattels). There is no allegation that the Foxes were at fault for the mistaken payment. Thus, the riskiness or prudence of the investment in the business venture is irrelevant in regard to the application of the change of circumstances doctrine.

**7.** The court limits its conclusion to the loss of value which occurred prior to the recipient receiving notice of the mistake. It does not need to address at this time the consequences of a loss of value occurring after notice has occurred.

recipient inequitable. The loss in value of an investment in a business venture made by the recipient with the money mistakenly received is such a change of circumstances.

That there was a change of circumstances diminishing or terminating the right to restitution is an affirmative defense; therefore, the recipient must prove the amount of the loss in the value of the investment and, through common law tracing rules, that the money mistakenly received was actually invested. However, the recipient need not prove that he would not have made the investment but for the receipt of the money. The plaintiff contended otherwise and based its motion for summary judgment on this issue; therefore, its motion is denied.

The defendants contended that the change in circumstances entitled them to summary judgment. However, they had the burden of submitting evidence sufficient to prove, by common law tracing rules, what portion of the payment made by Hilliard was invested in the failed business venture. This they have not done. For this reason and the other reasons mentioned earlier, their motion for summary judgment is also denied.