**LIBERTY MUTUAL, et al., Plaintiffs,**

v.

**WILLIAMS INTERNATIONAL INDUSTRIES, INC.,**
**Defendant.**

**Civ. A. No. 3:91CV00260.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 5, 1991.

---

Miles Dumville, Hazel & Thomas, Stephen C. Hall, Richmond, Va., for plaintiffs.

Philip Browder Morris, Morris and Morris, Michelle P. Wiltshire, Richmond, Va., Leonard J. Marsico, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

Pursuant to Fed.R.Civ.P. 56(b), both parties have filed motions for summary judgment. Plaintiffs have filed a Motion to Compel, which defendants oppose. Finally, plaintiffs have filed a Motion Pro Haec Vice.[1]

For the reasons stated below, this Court grants summary judgment in favor of defendant Williams International Industries.[2]

Plaintiffs Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company are Massachusetts corporations. Plaintiff Liberty Insurance Corporation is a Vermont Corporation with its principal place of business in Massachusetts [collectively referred to as "Liberty Mutual"]. These companies provided several insur-

---

1. On October 2, Defendants also filed a Motion for Extension of Time in which to file Summary Judgment. However, Defendants filed their Motion for Summary Judgment the next day, which was timely. As such, Defendant's Motion for Extension of Time is moot.

2. For the reasons stated from the bench, the Motion to Compel was denied and the Motion Pro Haec Vice granted.

ance policies for Williams International Industries, Inc. [hereinafter "Williams International"], a Virginia corporation, between February 8, 1984 and June 1, 1986. This Court retains jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (c).

## I.

Liberty Mutual claims that Williams International owes them $196,392 in back premiums (plus prejudgment interest pursuant to Va.Code Ann. § 6.1–330.54) for three policies Williams International purchased for the year ending February 8, 1986:

Workers Compensation policies: WC7–151–092457–015
WC2–151–092457–105
General Liability policy: LG1–151–092457–025.

In 1985, Williams International hired a new controller named Gloria Martin. Ms. Martin began seeking quotes from other insurers after the close of the policy year February 8, 1986. During Ms. Martin's "comparison shopping" period, she discovered that Liberty Mutual may have been overcharging premiums because work at Williams International was misclassified as high risk. The policies involved were billed on a "retro premium" basis, meaning that premiums were billed periodically pursuant to periodic audits by Liberty Mutual.

James O. Diggs, an auditor for Liberty Mutual, met with Ms. Martin to conduct an audit of Williams International's operation for the period between August 1, 1985 and February 8, 1986. Williams International received several statements from Liberty Mutual indicating credits to their accounts subsequent to this audit. Later in 1986, Liberty Mutual informed Williams International that Williams was due $142,645.27 in credit to its account.

The check for this credit was received and paid in January of 1987. Williams International submitted federal and state tax forms based on this transaction.

It is for this refund, plus $53,746.73 "in additional premiums and other charges," that Liberty Mutual seeks compensation.

## II.

In nearly all of its pleadings and court filings, Liberty Mutual admits that through errors of its own employees, on or before May 6, 1986, Liberty Mutual incorrectly credited to Williams International the amount of their annual premium. Liberty alleges in ¶ 9 of its complaint that it inadvertently credited Williams "not only its monthly premium payments, but also mistakenly credited the full amount of the annual policy premium." Nothing in the record indicates that Williams International was at fault for the May 6 error by Liberty Mutual's employees.

Liberty Mutual admits that it discovered the errors regarding the Workers Compensation policies in June of 1988, after which it sent a bill by statement dated July 22, 1988.

Liberty Mutual discovered the erroneous credit for the general liability policy in January 1989. A bill by statement dated January 27, 1989 (received February 3, 1989) was forwarded to Williams International. By letter of May 23, 1990, Liberty Mutual made final demand upon Williams International for premium owed.

Liberty Mutual delayed filing of this action until May 14, 1991.

## III.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985); Fed.R.Civ.P. 56(c). The court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agric. Extension Serv. Co.*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). A district court must look to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Plaintiffs request summary judgment on Count One of their complaint, the breach of three written insurance contracts. Liberty Mutual argues that a five year statute of limitation applies to this written contract, the insurance policy. Va. Code § 8.01–246. Under this theory, the filing of this action in May 1991 falls within a five year statute of limitation period. However, as discussed in Section IV *supra*, the more appropriate characterization of this action is that of restitution founded upon an implied contract. The implied contract arises from Liberty Mutual's mistaken overpayment, not from the original insurance policy.

Even under the language of the contract, however, Liberty Mutual makes an unsuccessful argument. First, Liberty Mutual argues that the policies themselves provide that Liberty Mutual may audit the records of Williams International within three years of the end of the policy period. As such, the Liberty Mutual contends that the discovery of the mistake in 1988 and 1989 is not untimely under the terms of the contract itself.

However, the 1986 audit conducted by Mr. Diggs resulting in the overpayment *was* Liberty Mutual's final audit under the contract. Any other reading to allow a subsequent audit period improperly misconstrues policy language against Williams International, the policyholder. It is general practice for courts to recognize that policyholders are at a bargaining disadvantage when procuring insurance. As such, courts in Virginia construe ambiguities in policy language in favor of the policyholder and broader coverage. *Atlantic Permanent Fed. Sav. and Loan Ass'n v. American Casualty Co. of Reading, Penn.,* 839 F.2d 212, 220 (4th Cir.1988), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925. ("Virginia law requires us to construe all ambiguities in insurance contracts against the insurer and in favor of coverage.").

As such, Liberty's claim is not one to enforce a contract, but one to reopen a settled account. Liberty's claims are restitutional, and not contractual, in nature.

Plaintiffs do not present a ground for summary judgment that this Court may adopt.

## IV.

This Court finds that the statute of limitations has passed and the doctrine of overpayment applies, thereby barring plaintiffs from bringing this action. As noted above, plaintiffs attempt to bring an action for restitution founded on an implied contract. Virginia law is determinative on the issue. Under Virginia law, defendant's motion for summary judgment must be granted.

■ In Virginia, the courts have long recognized the right to recover money paid by mistake of fact. The law implies a promise to return money mistakenly tendered in overpayment, so that one party may not unjustly enrich him or herself at the expense of another. *Hilliard v. Fox,* 735 F.Supp. 674 (W.D.Va.1990); 4A Michie's Jurisprudence, Contracts, § 99 (1986).

■ As such, plaintiffs' claim is barred under a three year statute of limitation. Va.Code § 8.01–246(4). In Virginia, a cause of action accrues when the mistake is discovered or when a party should have discovered their mistake in the exercise of due diligence. Va.Code Ann. § 8.01–249(1). The determination as to due diligence is a factual one. *Dennis v. Jones,* 240 Va. 12, 393 S.E.2d 390, 393 (1990).

■ This Court finds that a two year delay (between 1986 and 1988) in discovering a nearly $200,000 billing error does not constitute due diligence. In *Dennis v. Jones,* the Virginia Supreme Court used Webster's Dictionary definition of "diligence," which is "devoted and painstaking application to accomplish an undertaking." *Id.* Two years, filled with intermittent internal auditing and account balancing, is too long a time to fail to ascertain, with "devoted" and "painstaking" effort, a $142,000 mistake. In fact, in Plaintiffs' Response to Interrogatory No. 5, Liberty Mutual acknowledges that a properly functioning accounting check would have caught this error when the May 6, 1986 invoice was processed.

In *Dennis*, the Virginia Supreme Court ruled that the attorney failed to exercise simple steps to serve personally a defendant in a personal injury case. *Dennis v. Jones*, 393 S.E.2d at 394 ("Plaintiff could have located defendant either by a simple telephone call, by paying a small fee to the DMV, or by a subpoena for records, as he did in seeking his own employment records."). Here, the proper functioning of Liberty Mutual's own audit program might have caught the large overpayment. Such correct operation is one of those relatively routine tasks required by the Virginia Supreme Court in *Dennis*.

In *Hughes v. Foley*, plaintiff did not inspect his own cancelled checks to discover that he drafted two checks in one week to the same recipient, a refrigerator salesperson. 203 Va. 904, 128 S.E.2d 261, 262 (1962). While in *Hughes v. Foley* a full nine years passed before plaintiff discovered his error, the Virginia Supreme Court's treatment of Mr. Hughes' careless accounting nonetheless leads this Court to hold Liberty Mutual responsible for its two-year snafu. Liberty had ample opportunity to inspect its payment system and simply neglected to do so adequately.

Liberty Mutual argues that the period of time between the June 1988 discovery of the mistake and the May 1991 date of this action satisfies a three year statute of limitation requirement. However, this assertion fails to address the fact that Liberty admits that it *made* the mistake in May of 1986. Subsequent to that time, Liberty had numerous opportunities to discover its error.

First, Liberty Mutual had annual audits in 1986 and 1987 that might have, and in the exercise of due diligence should have, caught the error. Second, Liberty Mutual had to undergo internal matching of invoices. This, too, should have unveiled the imbalance. Finally, the most significant occasion to discover the error was the 1987 audit by Mr. Diggs. During this review, Liberty Mutual had a prolonged opportunity to inspect its account with Williams International. Through no fault of Williams International, Liberty Mutual erroneously issued a check worth nearly $150,000 rather than find its own mistake. This action also required internal balancing. After Mr. Diggs made his determination, Williams International was justified fully in relying upon his results.

## V.

 Finally, even if Liberty Mutual had filed this claim within the statute of limitations, Williams International has relied on the finality of the transaction and its position has sufficiently changed such as to make restitution inequitable. *Hibbs v. First Nat'l Bank*, 133 Va. 94, 112 S.E. 669, 673 (1922) (holding that a payment to a third party from proceeds of stock mistakenly sold under the wrong name constitutes sufficient change of circumstances). In *Hilliard v. Fox*, the court ruled that overpayment received from an investment was not recoverable upon discovery when that money had already been reinvested in a losing stock proposition. 735 F.Supp. 674 (W.D.Va.1990). Similarly, in *Myers v. Fidelity & Casualty Co.*, 759 F.2d 1542 (11th Cir.1985), the Eleventh Circuit ruled that when a ship sank and the insurance proceeds were used to satisfy an obligation to a third party, such overpayment could not equitably be recovered from the insured.

In *Hibbs v. First Nat'l Bank*, the Virginia Supreme Court noted three factors that applied under the doctrine of changed circumstances: (1) lack of fault on defendant's part; (2) change of position prior to knowledge of any mistake; and (3) defendant no longer had payment nor recourse to it. 112 S.E. at 674–675.

Regarding the issue of fault under the *Hibbs v. First Nat'l Bank* test, Liberty Mutual asserts that Williams International's own nonperformance with the terms and conditions of its contract contributed both to the original error and to the difficulty in discovering it. However, Liberty Mutual also blamed only its own calculations of premiums for the error in overpayment. According to Shelly Martin's affidavit, the account history made *discovery* of the error more difficult, and did not cause the error initially. Even if true, this

does not constitute sufficient fault on the part of Williams International to counsel a return of an overpayment directly flowing from Liberty Mutual's error.

Regarding notice under the *Hibbs v. First Nat'l Bank* criteria, Liberty Mutual argues that since Ms. Martin was unable to reconcile the books, she and Williams International were on notice that a mistake had occurred at a time earlier than they so claim. This argument ignores the fact that Ms. Martin informed Liberty Mutual of her difficulties and requested the audit eventually performed by Mr. Diggs. Mr. Diggs' final determination, even if Ms. Martin were unable to reconcile his outcome, was a reasonable point on which Ms. Martin could rely.

Finally, regarding detrimental reliance (the third concern under *Hibbs v. First Nat'l Bank*), Liberty Mutual argues Williams International did not detrimentally rely. This argument lacks merit. Williams International prudently awaited receipt and clearance of the check before taking any action using its proceeds.

Once Williams International deposited the check, it filed tax returns based on yearly revenue levels. As such, losses (for instance, of repayment) cannot be offset by income in a current year in which overall losses are anticipated.

Second, business decisions such as the sale of a subsidiary, are guided by revenue amounts a corporation assumes it has. Therefore, even if, as Liberty Mutual avers, actions such as the sale of a subsidiary did not directly relate to the overpayment at issue, it is clear to this Court that Williams International would make strategic choices (such as price) bearing the overpayment in mind. Simply put, Williams International conducted business premised upon the money it knew was in its coffers.

Finally, and perhaps most importantly, Williams International has acted upon this matter as if it were a resolved issue. They could not have foreseen any reason to maintain paperwork now necessary to their defense. The insurance policies at issue lapsed in *1986*. Williams International would be at too great a disadvantage pro-

ducing the discovery necessary to adjudicate this claim fairly. They could not fight the battle on even ground. This Court refuses to force Williams International to mount a defense laboring under a substantial handicap created, in large measure, by its adversary.

## VI.

For the reasons stated above, this Court GRANTS defendant's motion for summary judgment. Plaintiffs' motion for summary judgment is DENIED.